METROPOLITAN ASSOCIATES, a Wisconsin Limited
Partnership, on behalf of itself and all other
persons and entities who filed an objection to the
2008 assessment of any parcel of real or personal
property in the City of Milwaukee,
Plaintiff-Respondent-Petitioner,

v.

CITY OF MILWAUKEE,
a Wisconsin Municipal Corporation,
Defendant-Appellant.

Supreme Court

*No. 2009AP524. Oral argument October 7, 2010.
—Decided March 25, 2011.*

2011 WI 20

(Also reported in 796 N.W.2d 717.)

For the plaintiff-respondent-petitioner there were briefs by *Alan Marcuvitz, Robert L. Gordon, Andrea H. Roschke* and *Michael Best & Friedrich, LLP,* Milwaukee, and oral argument by *Robert L. Gordon.*

For the defendant-appellant there were briefs by *Grant F. Langley,* city attorney and *Vincent D. Moschella,* deputy city attorney, Milwaukee, and oral argument by *Vincent D. Moschella.*

There was an amicus brief by Maureen A. McGinnity, Foley & Lardner LLP, Milwaukee, John T. Barry, Quarles & Brady LLP, Milwaukee and Douglas A. Pessefall, Whyte Hirschboeck Dudek, S.C., Milwaukee, on behalf of State Bar of Wisconsin Taxation Section Board of Directors.

¶ 1. MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals reversing the circuit court order granting summary judgment to Metropolitan Associates.[1] Metropolitan Associates challenges the procedure taxpayers must follow in order to dispute municipal property tax assessments. After a taxpayer receives his or her annual property tax assessment, the taxpayer may challenge that assessment before the Board of Review for the municipality where the taxed property is located.[2] If the taxpayer remains unsatisfied after the Board of Review makes its determination, the taxpayer may seek review of that decision in the circuit court.[3]

¶ 2. Prior to 2008, a taxpayer could choose between two types of review in the circuit court: common law certiorari review or statutory de novo review pursuant to Wis. Stat. § 74.37. Common law certiorari review is a limited review of the record made before the Board of Review, while de novo review is an entirely independent circuit court action in which the circuit court creates its own record and gives no deference to the Board of Review's determination.

¶ 3. In 2008, the legislature passed 2007 Wis. Act 86 ("Act 86") which allows municipalities to pass an ordinance opting out of de novo review. Taxpayers in these "opt out" municipalities are restricted to a new form of circuit court review referred to as "enhanced

---

[1] *Metro. Assocs. v. City of Milwaukee*, 2009 WI App 157, 321 Wis. 2d 632, 774 N.W.2d 821.

[2] *See* Wis. Stat. § 70.47 (2007–08). All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[3] *See* Wis. Stat. §§ 70.47(13), 74.37.

certiorari review."[4] This enhanced certiorari review is broader in scope than traditional certiorari review but narrower in scope than de novo review. Act 86 also requires opt out municipalities to grant their taxpayers additional rights during their initial Board of Review hearing.

¶ 4. In 2009, the circuit court for Milwaukee County, the Honorable Jean DiMotto presiding, found that Act 86 unconstitutionally denied taxpayers residing in opt out municipalities equal protection of the laws by depriving those taxpayers of access to de novo review without a rational basis for doing so. The court of appeals reversed. It held that the treatment taxpayers received in opt out municipalities under Act 86 was not significantly different than the treatment taxpayers received in all other municipalities.

¶ 5. We conclude that the treatment taxpayers in opt out municipalities receive under Act 86 is significantly different than the treatment all other taxpayers receive, and we conclude that this difference in treatment lacks a rational basis. Accordingly, we reverse the court of appeals and hold that all of Act 86's modifications to Wis. Stat. §§ 70.47, 73.03, and 74.37 are unconstitutional.

## I. BACKGROUND

¶ 6. Property in Wisconsin is taxed by a method of assessment set forth in Wis. Stat. ch. 70. Assessors, who are either elected or appointed, must value all taxable real and personal property within their taxation district

---

[4] Act of Mar. 13, 2008, 2007 Wis. Act § 86 (relating to objecting to property tax assessments).

on an annual basis.[5] Wis. Stat. §§ 70.05, 70.10, 70.29, 70.32(1)-(2). Property owners who disagree with an assessment may file an objection before the local Board of Review. Wis. Stat. §§ 70.07, 70.075, 70.47.

¶ 7.   A Board of Review is a quasi-judicial body that hears evidence to adduce whether an assessor's valuation is correct. *Nankin v. Vill. of Shorewood,* 2001 WI 92, ¶ 18, 245 Wis. 2d 86, 630 N.W.2d 141. Its membership typically consists of lay citizens without legal or technical backgrounds. Wis. Stat. §§ 70.46(1), 70.99(10)(a); *Nankin,* 245 Wis. 2d 86, ¶ 31; *Rite-Hite Corp. v. Bd. of Review of Vill. of Brown Deer,* 216 Wis. 2d 189, 575 N.W.2d 721 (Ct. App. 1997). After conducting a hearing, the Board of Review may adjust an assessment if it determines that the assessment is too high or too low. § 70.47(6), (9)(a).

¶ 8.   We begin with an overview of the two traditional methods of obtaining judicial review of a Board of Review's decision available prior to the enactment of Act 86: certiorari review and de novo review. We then discuss how Wisconsin's process for challenging assessment decisions changed significantly in both 2001 and 2008—in 2001 it changed because of our *Nankin* decision, and in 2008 it changed because of Act 86.

A. Certiorari Review and De Novo Review

¶ 9.   Certiorari review existed prior to the enactment of Act 86[6] as a limited review in which the circuit court examined only the record made before the Board of Review. *Nankin,* 245 Wis. 2d 86, ¶ 20. In certiorari

---

[5] "Taxation district" is defined as "a town, village or city in which general property taxes are levied and collected." Wis. Stat. § 70.045.

[6] Wis. Stat. § 70.47(13) (1999–2000).

review, a circuit court may not take its own evidence nor conduct its own factual inquiry. *Id.* The circuit court applying certiorari review must uphold the Board of Review's decision unless: (1) the Board acted outside its jurisdiction, (2) the Board acted in violation of the law, (3) the Board's action was arbitrary, oppressive or unreasonable, representing its will rather than its judgment, or (4) the evidence was such that the Board could not reasonably make the determination in question. *Id.* If the circuit court determines that the Board of Review's assessment is so deficient that it meets one of these four tests, the court must remand the matter to the Board of Review for a reassessment. *Id.* The taxpayer seeking certiorari review receives scheduling preference in the circuit court and does not have to pay the tax before filing. Wis. Stat. § 70.47(13).

¶ 10.   De novo review, as it existed prior to the enactment of Act 86,[7] is a more substantial form of review than certiorari review. The circuit court applying de novo review may receive evidence regardless of the record made before the Board of Review. *Nankin,* 245 Wis. 2d 86, ¶ 25. While the circuit court conducting a de novo review gives no deference to the Board of Review's decision, the underlying assessment still carries a presumption of correctness. *Id.*; Wis. Stat. § 70.49(2). If a circuit court conducting de novo review determines that the Board of Review's assessment is incorrect, the circuit court may calculate the proper assessment without remanding it to the Board of Review for that purpose. *Nankin,* 245 Wis. 2d 86, ¶ 25. In contrast to certiorari review, the de novo action is not given scheduling preference in the circuit court and the taxpayer must pay the tax before filing. Wis. Stat. § 74.37(2).

---

[7] Wis. Stat. § 74.37 (1999–2000).

## B. 2001: *Nankin* Invalidates Population-Based Thresholds on De Novo Actions

¶ 11.  Prior to 2001, most property owners could obtain judicial review of a Board of Review's decision by filing an action in the circuit court seeking either certiorari review under Wis. Stat. § 70.47(13) or de novo review under Wis. Stat. § 74.37.[8] Prior to 2001, however, property owners in counties with populations of 500,000 or more could file for only certiorari review and did not have access to de novo review.[9] Wis. Stat. § 74.37(6).

¶ 12.  In 2001, we considered in *Nankin v. Village of Shorewood* whether preventing taxpayers' access to de novo review solely based on the population of the county in which the property was located unconstitutionally denied those taxpayers equal protection of the laws.[10] *Nankin,* 245 Wis. 2d 86, ¶ 11. We applied a three-step

---

[8] A third option, not relevant to the present case, is available for obtaining judicial review of a Board of Review's decision. An objecting taxpayer may file a written complaint with the Wisconsin Department of Revenue pursuant to Wis. Stat. § 70.85. This method is only available in limited circumstances. § 70.85(1). Review of the Department of Revenue's decision may only proceed through common law certiorari. § 70.85(4)(c); *See Hanlon v. Town of Milton,* 2000 WI 61, ¶ 23, 235 Wis. 2d 597, 612 N.W.2d 44. In *Nankin* we held that "[o]ur discussion of certiorari review of the board of review's decision applies equally for certiorari review of the Department of Revenue's decision." *Nankin,* 245 Wis. 2d 86, ¶ 20 n.8.

[9] Only Milwaukee County exceeded a population of 500,000 at that time.

[10] Because we interpret the United States Constitution's Fourteenth Amendment Equal Protection Clause and the Wisconsin Constitution's Equal Protection Clause in the same manner, we decided *Nankin* under both. *Nankin,* 245 Wis. 2d 86, ¶ 11 n.5.

94

analysis to guide our holding. First, we determined that the population-based threshold created a "distinct classification of citizens"—those owning property in Milwaukee County. *Id.*, ¶ 13. Second, we determined that this population-based threshold caused taxpayers in Milwaukee County to be treated in a "significantly different" manner from all other taxpayers because the de novo review available in all other counties provided greater protections than the certiorari review available in Milwaukee County. *Id.*, ¶ 14. Third, we determined that no rational basis existed for limiting access to de novo review solely because of the population of the county where the taxed property was located. *Id.*, ¶ 15. As a result, we held that the population-based threshold violated the rights provided to taxpayers under the equal protection clause. *Id.*, ¶ 46. The immediate effect of this holding was that both de novo and certiorari review became available to all property owners in Wisconsin regardless of the population of the county in which their property was located.

### C. 2008 to Present: Legislature Allows Municipalities to Opt Out of De Novo Review

¶ 13.  On March 13, 2008, seven years after our holding in *Nankin,* the Wisconsin Legislature passed Act 86. 2007 Wis. Act. 86. Act 86 allows municipalities to adopt an ordinance opting out of § 74.37 de novo review of Board of Review assessment decisions.

¶ 14.  A municipality that passes an ordinance pursuant to Act 86 "opting out" of de novo review must give their taxpayers greater rights in their Board of Review proceedings than those taxpayers would receive if they lived in all other municipalities. 2007 Wis. Act. 86 §§ 1–3, 6–7. Further, taxpayers in the opt out municipality lose access to de novo review and must

95

instead follow § 70.47(13) which provides for a new process we will refer to as "enhanced certiorari review."

¶ 15. These differences are further described in Part III of this opinion.

### D. Metropolitan Associates Challenges Act 86's De Novo Review Limits

¶ 16. The City of Milwaukee opted out of de novo review when its Common Council unanimously adopted an ordinance conforming with § 70.47(16)(c)[11], which became law on April 30, 2008. On July 15, 2008, Metropolitan Associates filed a class action lawsuit against Milwaukee seeking declaratory relief and a ruling that Act 86's opt out provision violated the equal protection provisions of the Wisconsin and the United States Constitutions. Wis. Const. art. I, § 1; U.S. Const. amend. XIV.

¶ 17. The circuit court orally granted summary judgment to Metropolitan Associates on January 20, 2009, memorialized in its written order dated February 9, 2009. It followed the same three-step analysis of Metropolitan Associates' equal protection claim as we did in *Nankin*. First, the circuit court found that Act 86 created a distinct classification of citizens—taxpayers residing in opt out municipalities. Second, it found that

---

[11] Wis. Stat. § 70.47(16)(c) details the enhanced Board of Review procedure for first class cities that adopt ordinances for assessment review under Act 86. To be classified a first class city, a city must have a population of at least 150,000. Wis. Stat. § 62.05(1)(a). The City of Milwaukee, by adopting an ordinance in 2008 conforming with § 70.47(16)(c), limited the assessment review available to its taxpayers to enhanced Board of Review and enhanced certiorari procedures under Wis. Stat. § 70.47(13).

96

Act 86 treated this class significantly different than taxpayers in all other municipalities. Third, the circuit court found that no rational basis existed for the different treatment of taxpayers who own property in opt out municipalities. It concluded that Wis. Stat. § 74.37(4)(c) as amended by Act 86 and § 74.37(4)(d) as created by Act 86[12] violated equal protection, and enjoined their enforcement.

¶ 18. The court of appeals, also following the *Nankin* three-step analysis, reversed the circuit court. The court of appeals agreed with the circuit court that taxpayers in opt out municipalities constituted a distinct classification of citizens. However, in contrast to the circuit court, the court of appeals determined that Act 86's enhanced certiorari review supplied taxpayers in opt out municipalities with "the functional equivalent of a court trial." *Metro. Assocs. v. City of Milwaukee*, 2009 WI App 157, ¶ 11, 321 Wis. 2d 632, 774 N.W.2d 821. The court of appeals therefore held that there was no significantly different treatment of taxpayers between de novo review and enhanced certiorari review. *Id.*, ¶ 9. Because of this holding, the court of appeals did not need to reach the third step of the analysis and, therefore, did not consider whether the legislature had a rational basis for distinguishing between taxpayers in opt out municipalities and taxpayers in all other municipalities. *Id.*, ¶ 10.

¶ 19. Metropolitan Associates then petitioned this court for review, which we granted. We heard oral arguments in this case on April 12, 2010. The oral argument concerned Metropolitan Associates' equal pro-

[12] Wis. Stat. § 74.37(4)(c) and § 74.37(4)(d) prohibit taxpayers in municipalities that have enacted ordinances adopting enhanced Board of Review and enhanced certiorari procedures from challenging their assessments under de novo review.

tection challenge under our three-step analysis. Following this oral argument, we ordered the parties to file supplemental briefs on four distinct issues:

1. Does either of the two procedures—de novo actions under Wis. Stat. § 74.37 and enhanced certiorari actions under Wis. Stat. § 70.47(13)—carry with it a right to a jury trial under Article I, Section V of the Wisconsin Constitution and *Village Food & Liquor Mart v. H & S Petroleum, Inc.*, 2002 WI 92, 254 Wis. 2d 478, 647 N.W.2d 177?

2. If the right to a jury trial exists under one set of procedures but not the other set of procedures, how does this affect the question of whether the procedures are significantly different?

3. What is the level of scrutiny applied to determine the constitutionality of the statute if there is a constitutional right to a jury trial?

4. Do the challenged portions of Act 86 survive that level of scrutiny?

¶ 20. The parties presented oral argument in regard to these four issues on October 7, 2010.

## II. STANDARD OF REVIEW

¶ 21. A challenge to the constitutionality of a statute presents a question of law that we review de novo. *Nankin*, 245 Wis. 2d 86, ¶ 10. A statute is presumed constitutional and this court must indulge in every presumption to sustain the law if at all possible. *Id.* The party challenging the statute must prove that the statute is unconstitutional beyond a reasonable doubt and any doubt must be resolved in favor of the statute's constitutionality. *Id.*

## III. DISCUSSION

■

¶ 22. The equal protection clause of the Wisconsin Constitution provides that "[a]ll people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness . . . ." Wis. Const. art. I, § 1. We apply the same interpretation to the equal protection provisions of the Wisconsin and the United States Constitutions. *Nankin,* 245 Wis. 2d 86, ¶ 11; *Tomczak v. Bailey,* 218 Wis. 2d 245, 261, 578 N.W.2d 166 (1998).

¶ 23. *Nankin* sets forth the three-step analysis we apply in determining whether Act 86 violates the equal protection provisions of the Wisconsin and United States Constitutions. *Nankin,* 245 Wis. 2d 86, ¶¶ 11–15. First, we must determine whether the legislature created a distinct classification of citizens when it passed Act 86. *Id.,* ¶ 13. Second, if it did, we must determine whether Act 86 treats this class significantly different from all others similarly situated. *Id.,* ¶ 14. If this question is also answered in the affirmative, we must reach the third determination: whether a rational basis exists for the significantly different treatment. *Id.,* ¶ 15.

### A. Act 86 Creates a Distinct Class of Citizens

■

¶ 24. The parties agree that Act 86 created a distinct class of citizens. We are not bound by this agreement. However, we have conducted our own review, and after doing so, hold that Act 86 did create a distinct class of citizens: taxpayers living in opt out municipalities. Therefore, we turn our attention next to

the second step in the *Nankin* analysis—whether Act 86 treats taxpayers in opt out municipalities significantly different than all other taxpayers.

### B. Act 86 Treats Taxpayers Living in Opt Out Municipalities Significantly Different Than All Other Taxpayers

¶ 25.   Act 86 requires taxpayers in opt out municipalities to follow a different procedure in order to challenge their property tax assessments than the procedure taxpayers in all other municipalities must follow. In this section, we first discuss Act 86's different treatment at the Board of Review stage. Second, we discuss Act 86's different treatment at the circuit court review stage. Third, we explain why these differences cause taxpayers in opt out municipalities to follow a significantly different process to challenge their assessments than taxpayers in all other municipalities. Fourth, we discuss whether a jury trial right exists in de novo review actions.

### 1. Assessment Challenges at the Board of Review Stage

¶ 26.   Act 86 grants taxpayers living in opt out municipalities three rights at the Board of Review stage that taxpayers in all other municipalities do not have: a more detailed notice of a changed assessment, the right to additional time to prepare for their Board of Review hearing date, and comparatively broader discovery rights. *See* Wis. Stat. § 70.47(7)(c), (8)(d), (8)(j).

¶ 27.   The first of these rights relates to the notice of a changed assessment that must be sent to an affected taxpayer. Assessors in all municipalities must send notices of changed assessments to each taxpayer at

100

least fifteen days before the Board of Review's annual meeting.[13] Wis. Stat. § 70.365. In opt out municipalities, this notice must inform the taxpayer of the last day on which he or she may file an objection. Wis. Stat. § 70.47(7)(c), (16)(c). Opt out municipalities must also post on their websites the last day objections to assessments may be made. *Id.*

¶ 28. The second of these rights is the right of taxpayers in opt out municipalities to a sixty-day extension of their Board of Review hearing date. If a taxpayer in any municipality objects to their assessment, the taxpayer must give written or oral notice of an intent to file an objection to the board's clerk at least forty-eight hours before the board's first scheduled meeting of the year.[14] Wis. Stat. § 70.47(7)(a). The taxpayer must then file a written objection within the first two hours of the Board of Review's first scheduled meeting of the year, unless extraordinary circumstances are shown. *Id.* During its first meeting, the Board of Review schedules hearings for each written objection it has received.[15] Wis. Stat. § 70.47(3)(a). The Board of Review must then notify each objecting taxpayer of the time of their

---

[13] Boards of review must meet annually during the thirty-day period beginning on the second Monday in May. Wis. Stat. § 70.47(1).

[14] Unless good cause or extraordinary circumstances are shown. Wis. Stat. § 70.47(7)(a). In first class cities, the notice of an intent to object must be written and must be filed by the third Monday in May. Wis. Stat. § 70.47(16)(a).

[15] The Board of Review may hear written objections at its first meeting if the board gave notice of the hearing to the property owner and the assessor at least forty-eight hours prior to the beginning of the scheduled meeting or if both the property owner and the assessor waive the forty-eight hour notice requirement. Wis. Stat. § 70.47(3)(a).

hearing at least forty-eight hours in advance of that meeting. § 70.47(3)(ah). In contrast, in opt out municipalities, the Board of Review must grant a sixty-day extension of the hearing date once a taxpayer requests the extension and pays a $100 fee. § 70.47(7)(c). This extension, available to only taxpayers in opt out municipalities, may be lengthened by the Board of Review if the taxpayer shows good cause. *Id.*

¶ 29.    The third of these rights relates to broader discovery rights available to taxpayers in opt out municipalities during Board of Review proceedings. If the objecting taxpayer in an opt out municipality receives a sixty-day extension, the assessor and the taxpayer must exchange all reports, documents, and exhibits they will present at the Board of Review hearing no less than ten days before the hearing. Wis. Stat. § 70.47(7)(c), 16(c). Both the assessor and the objecting taxpayer in an opt out municipality can compel the attendance of witnesses at the Board of Review hearing. § 70.47(8)(d). In addition, taxpayers in opt out municipalities may compel the attendance of witnesses for depositions after showing good cause to the Board of Review. *Id.*

## 2. Assessment Challenges at the Circuit Court Stage

¶ 30.    While Act 86 requires opt out municipalities to grant their taxpayers additional rights during Board of Review proceedings, Act 86 limits both the type and scope of circuit court review these taxpayers may seek. Act 86 limits taxpayers in opt out municipalities to circuit court review through the "enhanced certiorari procedure" set forth in Wis. Stat. § 70.47(13). In contrast, taxpayers in all other municipalities have a right to select from either traditional certiorari review or de novo review. *See* Wis. Stat. §§ 70.47(13), 74.37.

102

¶ 31. The enhanced certiorari review available to taxpayers in opt out municipalities is narrower in scope than the de novo review available to all other taxpayers. Under enhanced certiorari review, the circuit court must presume that the Board of Review's assessment is correct absent a "sufficient showing" that the assessment is incorrect. Wis. Stat. § 70.47(13). In opt out municipalities, it is the taxpayer's burden to rebut this presumption. If, in the course of an enhanced certiorari hearing, the taxpayer in an opt out municipality successfully rebuts the presumption that the Board of Review's assessment is correct, the court may consider (1) evidence that was not available at the time of the hearing before the Board, (2) evidence that the Board refused to consider, and (3) evidence that the court otherwise determines should be considered in order to correctly assess the property. *Id.* A taxpayer in an opt out municipality who seeks enhanced certiorari review is not required to pay the challenged tax prior to seeking such review, and the enhanced certiorari proceeding is given scheduling preference in the circuit court over other proceedings. *Id.* In addition, both Metropolitan Associates and Milwaukee agree that enhanced certiorari review does not carry with it a right to a jury trial.[16]

¶ 32. In contrast, the de novo review available in all other municipalities requires that a circuit court make its determination without regard to the Board of Review's record or decision. *Nankin,* 245 Wis. 2d 86, ¶ 25. In de novo review, the circuit court must hear new evidence and, while the court must presume that the assessor's valuation is correct, the court does not presume that the decision of the Board of Review is correct.

---

[16] *See* Part III.B.4.

*Id.* Taxpayers who request de novo review have access to traditional civil discovery tools, but they must pay the challenged tax prior to filing their action. Further, in contrast to enhanced certiorari proceedings, their action is not given scheduling preference over other circuit court proceedings. *Id.*, ¶ 29; Wis. Stat. §§ 74.37(4)(b), 70.47(13). In addition, the parties dispute whether de novo review includes a right to a jury trial.

### 3. Enhanced Certiorari and Enhanced Board of Review Procedures Available in Opt Out Municipalities Are Significantly Different From the De Novo Procedure Available in All Other Municipalities

¶ 33. Having surveyed the differences between the assessment challenge procedure available to taxpayers in opt out municipalities and the assessment challenge procedure available to taxpayers in all other municipalities, we next consider whether these differences are significant in light of this court's decision in *Nankin.* The court of appeals held that Act 86 successfully addressed *Nankin*'s equal protection concerns and, therefore, no significantly different treatment existed between taxpayers in opt out municipalities and taxpayers in all other municipalities. We disagree.

¶ 34. We first discuss the reasoning that led the *Nankin* court to hold that Milwaukee taxpayers experienced significantly different treatment. We then apply the reasoning from *Nankin* to the facts of the present case.

a. *Nankin* Concludes that Significantly Different Treatment Exists When Some Citizens May "Fully Contest Their Case in a Court Trial" and Others May Not

¶ 35. In 2001, all taxpayers could first seek review of an assessment at their local Board of Review. In 2001,

however, Milwaukee taxpayers could only challenge the Board of Review's decision through traditional certiorari review. Wis. Stat. § 70.47(13) (2000–01). In contrast, all other Wisconsin taxpayers could challenge a Board of Review's decision through either traditional certiorari review or § 74.37 de novo review. *See Nankin,* 245 Wis. 2d 86, ¶ 6. We held in *Nankin* that all taxpayers outside of Milwaukee could "fully contest their case in a court trial" through the de novo review process. *Id.,* ¶ 24. We then compared the assessment review procedure available to Milwaukee taxpayers with de novo review available to all other taxpayers to determine whether Milwaukee taxpayers had access to a process which allowed them to "fully contest their case in a court trial."

¶ 36. The *Nankin* court pointed to four differences between de novo review and the Board of Review procedures provided to Milwaukee taxpayers to conclude that the two procedures were significantly different. First, de novo review allows taxpayers to present their case in a forum that is conducted according to the rules of evidence and discovery. *Id.,* ¶ 29. Board of Review hearings, by contrast, follow more informal rules that "may lead to an incomplete or inadequate record." *Id.* Second, de novo review permits property owners to subpoena witnesses to testify at trial, while the Board of Review procedures in place prior to 2001 did not. Third, de novo review is conducted by a judge, while Board of Review proceedings are conducted by citizens who may not be "versed in the rules of evidence." *Id.,* ¶ 31. Fourth, de novo review "typically afforded a greater amount of time to prepare [a] case at the circuit court level," while Board of Review hearings afford less time to prepare a case. *Id.,* ¶ 32.

¶ 37. Next, *Nankin* focused on three differences between de novo review and traditional certiorari review when it held that the traditional certiorari process was significantly different than a de novo procedure which allowed taxpayers to "fully contest their case in a court trial." First, de novo review requires the circuit court to make its own independent determinations, while traditional certiorari review is limited to a review of the record as it was compiled at the Board of Review stage. Second, de novo review requires giving presumptive weight only to the assessor's determination, while traditional certiorari review requires circuit court deference to the Board of Review's decision. And third, de novo review requires the circuit court to make its own assessment determination, while traditional certiorari review generally requires the circuit court to remand to the board if a reassessment is necessary. *Nankin,* 245 Wis. 2d 86, ¶ 25.

¶ 38. Since Milwaukee taxpayers could not "fully contest their case in a court trial" while all other taxpayers could do so through the de novo procedure, we held that the classes received significantly different treatment. *Nankin,* 245 Wis. 2d 86, ¶¶ 24, 27.

### b. Taxpayers in Opt Out Municipalities May Not "Fully Contest Their Case in a Court Trial" While All Other Taxpayers May Do So

¶ 39. Applying this court's reasoning in *Nankin* to the present case, we must examine the differences between Act 86's enhanced certiorari and Board of Review procedures, and contrast them with the de novo procedure available to all other taxpayers—a process which allows taxpayers to "fully contest their case in a court trial." *Nankin,* 245 Wis. 2d 86, ¶ 24. First, we

106

review the enhanced Board of Review rights provided to taxpayers under Act 86, and conclude they do not provide taxpayers with the protections of a court trial. Second, we review the enhanced certiorari procedure under Act 86, and again conclude they fail to provide taxpayers with the protections of a court trial.

### i. Enhanced Board of Review Rights

¶ 40. The enhanced Board of Review hearing rights available under Act 86 to taxpayers in opt out municipalities do not allow taxpayers in Board of Review proceedings to "fully contest their case in a court trial." *Id.* Even with the additional rights granted under Act 86, the Board of Review proceedings continue to favor municipalities over taxpayers, just as they did in *Nankin.*

¶ 41. For one, the sixty-day hearing date extension under Act 86 runs the risk of forcing complex property disputes into being heard much more quickly than such disputes would typically be heard in a de novo action. Further, additional extensions following the initial sixty-day extension would require a finding of "good cause" by a Board of Review composed not of legal experts, but instead composed of lay citizens. Wis. Stat. § 70.47(7)(c), (16)(c). This truncated discovery period heightens the risk we feared in *Nankin* of an "incomplete or inadequate record." *Nankin,* 245 Wis. 2d 86, ¶ 29.

¶ 42. Even setting aside these defects, the Board of Review process suffers other shortcomings when compared to a de novo action. For one, the Board of Review procedure under Act 86 allows the taxpayer access to the assessor's trial exhibits a mere ten days prior to their hearing. Wis. Stat. § 70.47(13). The ap-

107

propriate time for the taxpayer to depose the assessor would be in this ten-day period after the taxpayer has received the assessor's report that will be introduced during the Board of Review hearing. Additionally, Act 86 requires that taxpayers in opt out municipalities show "good cause" in order to depose the assessor. § 70.47(8)(d). Therefore, in this ten-day pre-hearing period, the taxpayer would need to obtain a finding of "good cause" from a Board of Review composed of individuals untrained in the law, depose the assessor, review and analyze all of the assessor's trial exhibits, and prepare to argue their case. Further, during this ten-day pre-hearing period, the taxpayer would be attempting to discover other evidence that may refute the assessor's valuation. De novo trials, on the other hand, do not operate under such restrictive timelines and the discovery process is governed by a judge, not a lay citizen. *Nankin*, 245 Wis. 2d 86, ¶ 31. *Nankin*'s concern that the Board of Review would develop an "incomplete or inadequate record" remains unanswered. *Id.*, ¶ 29.

¶ 43. The enhanced Board of Review rights created by Act 86 fail to provide taxpayers the ability to "fully contest their case in a court trial." Accordingly, we hold that the enhanced Board of Review rights cause taxpayers in opt out municipalities to be treated significantly different than all other taxpayers.

## ii. Enhanced Certiorari Procedure

¶ 44. The enhanced certiorari procedure created by Act 86 also fails to offer the protections of a court trial. Specifically, the enhanced certiorari procedure significantly restricts the taxpayer's ability to bring additional evidence before the circuit court when compared to de novo review. In de novo review, the challenging taxpayer can seek the introduction of any

admissible evidence in the circuit court. Wis. Stat. § 904.02. Under the enhanced certiorari procedure created by Act 86, however, the circuit court may allow the taxpayer to introduce additional evidence *only* if the taxpayer first rebuts the presumption that the board's valuation is correct. *See* Wis. Stat. § 70.47(7)(c), (16)(a). If the taxpayer successfully rebuts the presumption that the Board's valuation is correct, then, and only then, may the circuit court consider (1) evidence that was not available at the time of the Board of Review hearing, (2) evidence that the Board of Review refused to consider, or (3) evidence that the court otherwise determines should be considered in order to determine the correct assessment. Wis. Stat. § 70.47(13).

¶ 45.   This court observed in *Nankin* that the de novo action "is not simply another means of judicial review." *Nankin*, 245 Wis. 2d 86, ¶ 24. Instead, the de novo action is a completely independent cause of action in which the Board of Review's factual and legal determinations may be entirely disregarded by the circuit court. *Id.*, ¶¶ 24–25.

¶ 46.   Unlike de novo actions, the circuit court on enhanced certiorari review must first review the Board of Review's factual and legal findings. Only then does it decide whether the decision's presumption of correctness is rebutted—a prerequisite to the taxpayer introducing any independent evidence.[17] Wis. Stat. § 70.47(13). This

---

[17] Under Act 86, the circuit court may consider "evidence that the court . . . determines should be considered in order to determine the correct assessment." Wis. Stat. § 70.47(13). It is true that this "catch-all" option provides an opportunity for the taxpayer to seek the introduction of new evidence. However, the plain language of the statute allows for such an opportunity only after the taxpayer overcomes the substantial burden of demonstrating the incorrectness of the Board of Review's deci-

enhanced certiorari procedure merely entails a "court's review of a lower court's or an administrative body's factual or legal findings." *Nankin,* 245 Wis. 2d 86, ¶ 24. This is not comparable to a de novo action where taxpayers have access to a new "action according to state civil practice and procedure, including the right to a trial." *Id.* The taxpayer on de novo review need not first overcome any presumptions to introduce evidence. Rather, "[a]ll relevant evidence is admissible" in de novo actions. Wis. Stat. § 904.02.

■

¶ 47.   The enhanced certiorari procedure created by Act 86 fails to provide taxpayers the ability to "fully contest their case in a court trial." Accordingly, we hold that the enhanced certiorari procedure created by Act 86 causes taxpayers in opt out municipalities to be treated significantly different than all other taxpayers.

### 4. Section 74.37 De Novo Review Does Not Contain a Jury Trial Right

¶ 48.   Both parties concede that if a § 74.37 de novo action contains a jury trial right and a § 70.47(13) enhanced certiorari proceeding does not contain such a right, this would per se qualify as significantly different treatment.[18] We agree that such a distinction between the assessment review processes would qualify as a

---

sion and, even then, does so only at the discretion of the circuit court which "may" consider the new evidence.

[18] The parties agree that enhanced certiorari proceedings do not contain a jury trial right. We also agree. These proceedings are directly correlated to the common law writ of certiorari which was not an action for which a jury would have been available at common law. *See Milwaukee Iron Co. v. Schubel,* 29 Wis. 2d 444, 450–52 (1872).

significant difference. Therefore, whether the § 74.37 de novo action contains a jury trial right is relevant in determining whether the de novo action and enhanced certiorari proceeding are significantly different.

■

¶ 49.   The parties disagree as to whether de novo actions brought pursuant to Wis. Stat. § 74.37 contain a jury trial right. We hold they do not. In *Village Food & Liquor Mart,* 254 Wis. 2d 478, ¶ 11, we held that:

> [A] party has a constitutional right to have a statutory claim tried to a jury when: (1) the cause of action created by the statute existed, was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848 and (2) the action was regarded at law in 1848.

*Id.* Metropolitan Associates argues that the modern § 74.37 de novo excessive assessment claim is a counterpart to the common law claim for "money had and received" which existed in 1848. Milwaukee argues that the claim for money had and received included only illegal assessment claims and not excessive assessment claims.

¶ 50.   We conclude that an action for money had and received in an excessive valuation case was not recognized at common law in 1848 and therefore only reach the first step in the *Village Food* analysis. In applying the first step of the *Village Food* test, we look to whether a § 74.37 de novo action "is essentially the counterpart of a cause of action existing in 1848 [and whether] the two causes of action . . . share a similar purpose." *Harvot v. Solo Cup Co.,* 2009 WI 85, ¶ 72, 320 Wis. 2d 1, 768 N.W.2d 176.

¶ 51.   First, we discuss whether *Matheson v. Town of Mazomanie,* 20 Wis. 201 (*191)(1865), or *A.H.*

111

*Strange Co. v. City of Merrill,* 134 Wis. 514, 115 N.W.2d 115 (1908), points to a common law counterpart to the § 74.37 de novo excessive assessment action. Second, we discuss whether the assessment challenge process which existed in pre-statehood Wisconsin contained a jury trial right. Third, we discuss whether the assessment challenge process which existed immediately after statehood contained a jury trial right.

### a. No Common Law Action Existed in 1848 for Excessive Assessment Claims

¶ 52.   Metropolitan Associates cites no case showing that actions for an excessive assessment existed in our pre-1848 common law. Metropolitan Associates erroneously relies on *Matheson v. Town of Mazomanie,* 20 Wis. 201 (*191)(1865) to support its argument that the common law action for money had and received included excessive assessment claims. In that case, the taxpayer ("Matheson") self-reported and verified by oath the value of his personal property to be $1,000. *Id.* at 201 (*191). The assessor then added $5,000 to the value of Matheson's nonenumerated articles of personal property, for a total assessed value of $6,000. *Id.* We held that after Matheson had verified the value of his nonenumerated property by oath, neither the assessor, town clerk, or board of supervisors had the statutory power to increase the valuation. Accordingly, we concluded that the $5,000 addition was "unlawful and void" against Matheson. *Id.* at 204 (*194).

¶ 53.   *Matheson* is not an excessive assessment case. The "unlawful and void" language from *Matheson* shows that the assessor did not merely overvalue property which the assessor had the lawful power to tax. This "unlawful and void" language instead reveals that the assessor did not have the power to assess the

nonenumerated articles against Matheson. A clear counterpart to the common law *Matheson* claim would be a modern Wis. Stat. § 74.35 action to recover an "unlawful tax" and not a Wis. Stat. § 74.37 excessive assessment action. Modern excessive assessment cases under § 74.37 do not concern the power of the assessor to assess a certain property (i.e. the "lawfulness" of the tax). Rather, modern excessive assessment cases concern the proper application of assessment principles to property which can lawfully be subject to tax.

¶ 54.    Metropolitan Associates further relies on our holding in *A.H. Strange Co. v. City of Merrill,* 134 Wis. 514, 518, 115 N.W. 115 (1908), that:

> Independently of the statute, if one pays a tax involuntarily, . . . he may sue to recover back the tax. It will be observed that an action based on involuntary payment of an illegal tax was held to be maintainable in this state before the passage of the law of 1870 . . . .

Metropolitan Associates argues that since property taxes are involuntarily paid, they fall under the common law action described in *A.H. Strange.* Metropolitan Associates, however, ignores the language in *A.H. Strange* which expressly limits the common law action described therein to one involving an "illegal tax." *Id.* Again, this implicates a § 74.35 unlawful tax claim and not the § 74.37 excessive assessment claim. Accordingly, case law evidences no common law action existing in 1848 for an excessive assessment claim.

### b. The Procedure for Challenging Assessments Which Existed in Wisconsin Before 1848 Did Not Contain a Jury Trial Right

¶ 55.    The statutory processes for assessment challenges which existed in the decade prior to state-

113

hood show that in this period, excessive assessment cases were not tried to juries.[19] The 1839 Statutes of the Territory of Wisconsin required that:

[S]hould any person feel aggrieved by the value which may be affixed upon his land by the assessor, or by the value at which the appraisers estimated his town lot, he may produce evidence before the board of commissioners, and if they think the value too high or too low, they shall order the clerk to alter it accordingly.

Wis. Terr. Stat. p. 45 § 5 (1839). As this statute illustrates, prior to statehood, county commissioners served as the precursor to the modern Board of Review. This review conducted by county commissioners was not a jury trial but rather is more comparable to an administrative hearing before a public agency.

¶ 56. The 1839 statutes also provided a mechanism for review of the county board of commissioners' decision in the district court:

From all the decisions of the several boards of commissioner[s] there shall be allowed an appeal to the district court, by any person or persons aggrieved, and the person or persons appealing shall take the same within thirty days after such decision, by giving bond with security, to the acceptance of the clerk of said board, conditioned for the faithful prosecution of such appeal, and the payment of costs, if the same shall be adjudged by the said court to be paid by such appellant; and the

---

[19] This 1838–48 period is critical to our analysis because the Village Food test requires that we examine whether the cause of action created by Wis. Stat. § 74.37 "was known, or was recognized at common law at the time of the adoption of the Wisconsin Constitution in 1848." *Village Food,* 254 Wis. 2d 478, ¶ 11.

clerk shall record such appeal, with the cases pending in the district court, within twenty days after the taking of such appeal.

Wis. Terr. Stat. p. 106 § 18 (1839). The fact that such an appeal would be heard by a judge and not a jury provides support for our conclusion that the procedure for prosecuting an excessive assessment has never included the right to a jury trial. Wis. Terr. Stat. p. 196 § 6 (1839).

### c. The Procedure for Challenging Assessments Which Existed Immediately After Statehood Did Not Contain a Jury Trial Right

¶ 57. During the decade after statehood, from 1848 until 1858, Wisconsin allowed property owners to make an affidavit as to the value of their property. Wis. Stat. tit. 5, ch. 15, § 26 (1849). The assessor was required to accept the value determined by the taxpayer's affidavit. *Id.* Because of this affidavit process, taxpayers had no reason to challenge assessments—the taxpayers themselves valued the property. Simply put, there was no need for juries in such matters, which is likely why none were provided for by statute.

¶ 58. Because taxpayers had no right to try excessive assessment claims to juries either immediately before or after statehood, it would be incompatible with both Wisconsin's history and the *Village Food* test to hold that the modern § 74.37 de novo excessive assessment claim contained a jury trial right.

¶ 59. Although we find that neither an enhanced certiorari proceeding nor a de novo action contains a jury trial right, we nonetheless hold that Act 86 treats taxpayers in opt out municipalities significantly different from all other taxpayers. We must therefore, unlike

115

the court of appeals, reach the third step of Metropolitan Associates' equal protection challenge—whether there is a rational basis for this significantly different treatment. *Nankin*, 245 Wis. 2d 86, ¶ 15.

### C. No Rational Basis Exists for the Significantly Different Treatment of Taxpayers in Opt Out Municipalities

¶ 60.   Having concluded that Act 86 treats taxpayers in opt out municipalities significantly different from all other taxpayers, we next consider whether this significantly different treatment has a rational basis.[20]

■

¶ 61.   A statute violates equal protection only when "the legislature has made an irrational or arbitrary classification, one that has no reasonable purpose or relationship to the facts or a proper state policy." *Milwaukee Brewers v. Wisconsin Dep't of Health & Soc. Servs.*, 130 Wis. 2d 79, 99, 387 N.W.2d 254 (1986). Any doubts must be resolved in favor of the reasonableness of the classification. *State v. Hezzie R.*, 219 Wis. 2d 848, 894, 580 N.W.2d 660 (1990).

---

[20] Usually, this court will uphold a statute under equal protection principles if we find that a rational basis supports the legislative classification. *Aischer ex rel. LaBarge v. Wis. Patients Compensation Fund*, 237 Wis. 2d 99, 127, 613 N.W.2d 849 (2000). We engage in strict scrutiny analysis only when a statute impinges on a "fundamental right" or creates a classification that "operates to the peculiar disadvantage of a suspect class." *Castellani v. Bailey*, 218 Wis. 2d 261, 261–62, 578 N.W.2d 166 (1998). In the present case, because no suspect class or fundamental interest is involved, we will sustain the classification if any rational basis exists to support it. *Milwaukee Brewers v. Wisconsin Dep't of Health & Soc. Servs.*, 130 Wis. 2d 79, 98, 387 N.W.2d 254 (1986).

¶ 62.   " 'The fact [that] a statutory classification results in some inequity . . . does not provide sufficient grounds for invalidating a legislative enactment.' " *Id.* at 893–94. (quoting *State v. McManus,* 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989)). Indeed, " '[e]qual protection does not deny a state the power to treat persons within its jurisdiction differently . . . .' " *Id.* at 893. However, "[t]he basic test is not whether some inequality results from the classification but whether there exists a rational basis to justify the inequality of the classification." *Milwaukee Brewers,* 130 Wis. 2d at 99. In determining whether a rational basis exists, we look first to determine whether the legislature articulated a rationale for its determination. *Id.* at 99–101. If we cannot identify any such articulated rationale, it is the court's obligation to construct one. *Id.* at 101.

¶ 63.   The classification created by Act 86 is based on whether or not a municipality has enacted an ordinance opting out of de novo review. After reviewing Act 86's legislative history, we note that the legislature did not articulate any rationale for creating this distinct class of opt out taxpayers. Therefore, we are obligated to construct a rationale if at all possible. *Nankin,* 245 Wis. 2d 86, ¶ 37.

¶ 64.   Under our case law, a statute must meet five criteria in order to have a rational basis:

(1) All classification[s] must be based upon substantial distinctions which make one class really different from another;

(2) The classification adopted must be germane to the purpose of the law;

117

(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within the class];

(4) To whatever class a law may apply, it must apply equally to each member thereof;

(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Nankin,* 245 Wis. 2d 86, ¶ 39 (citing *Aicher,* 2000 WI 98, ¶ 58, 237 Wis. 2d 99, 613 N.W.2d 849)(alterations in original). Under this test, Act 86 fails to satisfy the first, second, and fifth criteria.

¶ 65. To overcome the first prong of the rational basis test, Milwaukee must show that "substantial distinctions" exist between taxpayers living in opt out municipalities and taxpayers living in all other municipalities.

¶ 66. Milwaukee argues that the enhanced Board of Review rights and enhanced certiorari procedure given to taxpayers in opt out municipalities create substantial distinctions between the classes sufficient to make taxpayers in opt out municipalities "really different" from taxpayers in all other municipalities. *Nankin,* 245 Wis. 2d 86, ¶ 39. Metropolitan Associates argues that Milwaukee only cites distinctions in the *treatment* of the taxpayers and does not cite to any distinctions between the *characteristics* of the taxpayers in the two classes.

¶ 67. In *Nankin* we held that "[t]here is nothing inherent about populous counties to justify the classification in the statute that restricts the manner in

which owners of property located in such counties may challenge their assessments." *Nankin,* 245 Wis. 2d 86, ¶ 41. We also held that:

> There is no reason why an owner of property located in the Village of Shorewood in Milwaukee County should be treated differently than an owner of property in the Village of Amherst in Portage County with respect to challenging their property assessments.

*Id.*

¶ 68.  In this case—to echo *Nankin's* holding—we see nothing inherently different about taxpayers in opt out municipalities that would justify restricting the manner in which taxpayers located in those municipalities may challenge their assessments. *See Id.,* ¶ 41. Taxpayers in opt out municipalities are no different from taxpayers in all other municipalities, except for the different rights available to taxpayers in opt out municipalities at the Board of Review and circuit court review stages. We see no reason why Act 86 allows opt out municipalities to deny their taxpayers the ability to "fully contest their case in a court trial," while taxpayers in all other municipalities may still fully contest their case in a de novo proceeding.[21] *Id.,* ¶ 24.

¶ 69.  Milwaukee advances no characteristic of taxpayers in opt out counties that makes such taxpay-

---

[21] Milwaukee advances two arguments in the present case that are necessarily inconsistent with each other. On the one hand, Milwaukee denies that Act 86 treats taxpayers in opt out municipalities significantly different than taxpayers in all other municipalities. On the other hand—for the purposes of its rational basis argument—Milwaukee argues that the differences in the treatment between these two classes constitute "substantial distinctions" which make opt out taxpayers "really different" from all other taxpayers. The illogic of this position is self-evident.

119

ers really different from all other taxpayers. Thus, it fails to establish the first prong of the rational basis test.

¶ 70. Under the second prong of the rational basis test, we examine whether the classification adopted is germane to the purpose of the law. Milwaukee argues —similarly to the arguments we found unpersuasive in *Nankin*—that the purpose of Act 86's opt out review is to promote early settlement, provide taxpayers access to a faster review, and provide taxpayers a cheaper review. *See Nankin*, 245 Wis. 2d 86, ¶ 37. Milwaukee argues that creating the class of opt out taxpayers is germane to these purposes. We are not persuaded.

¶ 71. Judicial efficiency is a concern that all courts share, irrespective of municipal location. *See id.,* ¶¶ 38, 43–44. It is irrational for the legislature to allow opt out municipalities to arbitrarily deprive their citizens of de novo review based on whatever criteria the municipality chooses to consider. Act 86 does not bind a municipality to first consider whether opting out of de novo review would be a more efficient process for that municipality and its taxpayers. A municipality following Act 86 may, for whatever reason it chooses— whether aligned with the legislature's stated objectives or not—opt out of de novo review.

¶ 72. Milwaukee argues that the assessment review under Act 86 is a "faster, more efficient, more cost-effective" procedure than the traditional Board of Review and circuit court review procedure. If this is true, there appears to be no reason why the legislature would not simply repeal the § 74.37 de novo review statute and instead require the Act 86 review procedure be followed in all municipalities. However, the legislature did not do this. Instead, the classification created by the legislature under Act 86 delegates the decision of

120

whether to pass an ordinance adopting the assessment review procedure under Act 86 to each individual municipality in Wisconsin. The objectives of Act 86 argued by Milwaukee in the present case, which are essentially to create a more efficient assessment review procedure for municipalities, have *no* relation to the classification created by Act 86, which simply delegates the choice of whether to implement Act 86's streamlined assessment review procedure to each individual municipality. To be germane to the purposes of Act 86, the classification created by Act 86 would need to, in some way, align to the legislature's objectives in enacting Act 86. Milwaukee fails to explain, and we are unable to discern, how the classification of opt out taxpayers is germane to the purposes of Act 86. Therefore, we conclude that Milwaukee fails to satisfy the second prong of the rational basis test.

¶ 73. Finally, under the fifth prong of the rational basis test, we "examine whether the characteristics of each class are so far different as to reasonably suggest the propriety, as to the public good, of substantially different legislation." *Nankin,* 245 Wis. 2d 86, ¶ 43. Here, as noted above, Milwaukee presents *no characteristic* of taxpayers residing in opt out municipalities —and we are unable to discern one—that is different than the characteristics of all other taxpayers. Since the characteristics of these taxpayers are identical, they cannot "reasonably suggest the propriety . . . of substantially different legislation." Thus, Milwaukee also fails to satisfy the fifth criteria of the rational basis test.

¶ 74. In sum, Act 86 fails to satisfy the first, second, and fifth criteria of the rational basis test. We therefore hold that Act 86's irrational denial of de novo

121

review to a distinct class of citizens violates the equal protection provisions of the Wisconsin and the United States Constitutions.

### D. Act 86's Severability

¶ 75.   Because we have concluded that the provisions of Act 86 which allow municipalities to deny their citizens access to § 74.37 de novo review violate equal protection, we must now determine whether the unconstitutional provisions may be severed from Act 86's remaining provisions.

¶ 76.   Wisconsin Stat. § 990.001(11) provides that "[i]f any provision of the statutes or of a session law is invalid . . . such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application." We have long held that "the presumption is in favor of severability." *Nankin,* ¶ 49 (quoting *State v. Janssen,* 219 Wis. 2d 362, ¶ 37, 580 N.W.2d 260 (1998)). "Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id.*

¶ 77.   The legislature has expressed no intent in Act 86 that is contrary to the general presumption of severability. Further, the remaining sections of Wis. Stat. §§ 70.47, 73.03, and 74.37 remain fully operative as a law when the modifications from Act 86 which create the enhanced Board of Review procedure and the enhanced certiorari procedure are severed. As a result, we hold that the provisions of Act 86 which create the enhanced Board of Review procedure and the enhanced certiorari procedure are severable.

¶ 78.   The circuit court severed only the specific subsections of § 74.37 that restrict taxpayers in opt out

122

municipalities from seeking de novo review.[22] The statutes creating the enhanced Board of Review and enhanced certiorari procedures were not affected by the circuit court order.

¶ 79.   As a result, under the circuit court's order, taxpayers in opt out municipalities would have access to three separate assessment review procedures: the enhanced Board of Review procedure, enhanced certiorari procedure, and de novo review. By contrast, under the circuit court's order, taxpayers in all other municipalities would have access to traditional certiorari review and de novo review. In enacting Act 86, the legislature clearly did not intend to create a situation where enhanced board of review and enhanced certiorari procedures would be available in a municipality where de novo review was also available. Therefore, we conclude that all of Act 86's modifications to Wis. Stat. §§ 70.47, 73.03, and 74.37 are unconstitutional.[23]

¶ 80.   It is important to note that our holding today simply returns the Board of Review procedures in all counties to the procedures which existed before Act 86 was approved. It also returns the procedure for challenging Board of Review assessment determina-

---

[22] The specific subsections of § 74.37 that were severed by the circuit court were § 74.37(4)(c) as amended by Act 86 and § 74.37(4)(d) as created by Act 86.

[23] One exception exists. Section 10 of Act 86 modifies the manner in which interest is calculated under § 74.37. This section applies to all taxpayers seeking de novo review and therefore is not implicated by our equal protection analysis. Further, it is evident the legislature would have enacted this interest rate provision independently of the provisions we are invalidating today. Therefore, we do not sever § 74.37(5) as modified by Section 10 of Act 86.

tions to the procedure which existed before Act 86 was approved—allowing all taxpayers the choice between traditional certiorari review and de novo review.

## IV. CONCLUSION

¶ 81. We conclude that the treatment taxpayers in opt out municipalities receive under Act 86 it significantly different than the treatment all other taxpayers receive, and we conclude that this difference in treatment lacks a rational basis. Accordingly, we reverse the court of appeals and hold that all of Act 86's modifications to Wis. Stat. §§ 70.47, 73.03, and 74.37 are unconstitutional.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 82. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with the unanimous decision of the court of appeals reversing the order of the circuit court and holding that 2007 Wis. Act 86 is constitutional. I agree with the court of appeals that in enacting 2007 Wis. Act 86 the legislature sought to, and effectively did, address the equal protection deficiencies identified in *Nankin v. Village of Shorewood,* 2001 WI 92, 245 Wis. 2d 86, 630 N.W.2d 141.

¶ 83. As a result of 2007 Wis. Act 86, a taxation district may determine the procedure a taxpayer may use to challenge an assessment. The taxation district may adhere to Wis. Stat. § 74.37(3)(d), allowing a taxpayer to pay the assessment and commence an action in circuit court to recover the amount of a claim not allowed. Or a taxation district may "opt in" to Wis. Stat. § 74.37(4)(c), (4)(d), allowing a taxpayer to get additional rights before the Board of Review and a broad right to be heard in court following an adverse decision by a Board of Review.

124

¶ 84. First, like the court of appeals, I conclude that the treatment of taxpayers in "opt-in" taxation districts under 2007 Wis. Act 86 is not significantly different from the treatment of taxpayers in taxation districts operating under Wis. Stat. § 74.37(3)(d). Second, I conclude that even if the treatment of taxpayers in the two different classes of municipalities is significantly different, a rational basis exists for enabling taxing districts to determine whether to enact an ordinance to "opt in" under 2007 Wis. Act 86. Third, I conclude that the majority errs in its severability analysis. If sections 8 and 9 of 2007 Wis. Act 86 are unconstitutional, they may be severed from the remainder of 2007 Wis. Act 86.

I

¶ 85. Like the court of appeals, I conclude that the treatment of taxpayers in opt-in taxation districts under 2007 Wis. Act 86 is not significantly different from the treatment of taxpayers in taxation districts operating under Wis. Stat. § 74.37(3)(d).[1] Accordingly, 2007 Wis. Act 86 is not unconstitutional.

¶ 86. 2007 Wis. Act 86 addressed the concerns this court elucidated in *Nankin*.

¶ 87. 2007 Wis. Act 86 gives increased rights to the taxpayer before the Board of Review:

- Property owners can request a 60–day period to prepare for a hearing before the Board and may request additional extensions for good cause.

- The parties are required to simultaneously exchange all reports, documents, and exhibits that will be presented at the hearing at least 10 days prior to the Board hearing.

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

- The Board may, and upon request of the assessor or the taxpayer shall, compel the attendance of witnesses for the hearing. Further, the Board upon good cause may compel the attendance of witnesses for depositions.

¶ 88. Moreover, 2007 Wis. Act 86 gives increased rights to the taxpayer in judicial review of the Board of Review's assessment. The decision of the Board of Review is granted a presumption of correctness, but "that presumption goes away if 'rebutted by a sufficient showing by the [taxpayer] that the valuation is incorrect. If the presumption is rebutted, the court shall determine the assessment without deference to the board of review and based on the record before the board of review, except that the court may consider evidence that was not available at the time of the hearing before the board[,] [or] that the board refused to consider, or that the court otherwise determines should be considered in order to determine the correct assessment.' "[2]

¶ 89. As the court of appeals explains, the circuit court is given extensive leeway in judicial review under 2007 Wis. Act 86, consistent with a circuit court's powers to conduct trials.[3]

¶ 90. A presumption plays a role in judicial review under 2007 Wis. Act 86 and also plays a role in judicial review under Wis. Stat. § 74.37(3)(d). The circuit court in a § 74.37(3)(d) action gives presumptive weight to

---

[2] *Metro. Assocs. v. City of Milwaukee*, 2009 WI App 157, ¶ 9, 321 Wis. 2d 632, 774 N.W.2d 821 (the court of appeals explains that this analysis comes directly from the statutes but that "[t]he bracketed comma does not appear in the amended Wis. Stat. § 70.47(16)(a); the bracketed "or" is in the amended § 70.47(16)(a) but is not in the amended § 70.47(13)").

[3] *Id.*, ¶ 9.

the assessor's assessment. Therefore, under 2007 Wis. Act 86 or under § 74.37(3)(d), a taxpayer before the circuit court must overcome a presumption, either that the board's decision is presumptively correct, or that the assessor's assessment is presumptively correct. In situations when the board accepts the assessor's assessment as its determination of the assessment value, the two presumptions are indistinguishable.

¶ 91. Even if the difference in the operation of these two presumptions under the two systems amounts to "some inequity," which I do not think it does, a "statutory classification [that] results in some inequity ... does not provide sufficient grounds for invalidating a legislative enactment."[4]

¶ 92. I conclude that a taxpayer in an "opt in" taxation district is not treated significantly differently from a taxpayer who pays the tax and seeks relief from an excessive assessment under Wis. Stat. § 74.37(3)(d). Accordingly, I conclude there is no equal protection violation.

## II

¶ 93. In *Nankin,* this court was faced with a classification based on county population. In the instant case, we are faced with a classification based on an option given to taxation districts.

¶ 94. The challenged legislation in the present case, unlike the statute the court declared unconstitutional in *Nankin,* is uniformly applicable to all taxation districts. The classifications developed in the present statutory system are based on an option granted to all

---

[4] *State v. McManus,* 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989).

taxation districts to determine a comprehensive tax assessment challenge system applicable to the taxpayers in that district.

¶ 95. This distinction leads me to the conclusion that even if I were to agree with the majority that taxpayers are treated substantially differently, the legislation granting a taxation district the option to establish this alternative procedure for tax assessment challenges is constitutional.

¶ 96. A statute is presumed constitutional.[5] In the present case it is undisputed that rational basis is the appropriate level of scrutiny for the equal protection challenge.[6] The challenger has the burden of demonstrating that the classification is arbitrary and irrational beyond a reasonable doubt.[7]

¶ 97. The statute challenged in the instant case will be upheld against an equal protection challenge if a plausible policy reason exists for the classification and

---

[5] *Nankin v. Village of Shorewood,* 2001 WI 92, ¶ 10, 245 Wis. 2d 86, 630 N.W.2d 141.

[6] For a discussion of the strict and intermediate levels of scrutiny when a statute is challenged on equal protection grounds, see *Ferdon ex rel. Petrucelli v. Wisconsin Patients Compensation Fund,* 2005 WI 125, ¶¶ 59–63, 284 Wis. 2d 573, 701 N.W.2d 440.

[7] *Ferdon,* 284 Wis. 2d 573, ¶ 73.

This oft-used language of "proof beyond a reasonable doubt" is more pertinent to an evidentiary burden of proof than to a burden imposed on a party on constitutionality, a question of law. The burden of proof language recognizes the deference due to the legislature. *State v. Jadowski,* 2004 WI 68, ¶ 10 n.7, 272 Wis. 2d 418, 680 N.W.2d 810; *Davis v. Grover,* 166 Wis. 2d 501, 564 n.13, 480 N.W.2d 460 (1992) (Abrahamson, J., dissenting); *Guzman v. St. Francis Hosp.,* 2001 WI App 21, ¶ 4 n.3, 240 Wis. 2d 559, 623 N.W.2d 776.

the classification is not arbitrary in relation to that reason.[8] It will be held unconstitutional if it is shown to be "patently arbitrary" with "no rational relationship to a legitimate government interest."[9]

---

[8] *Ferdon,* 284 Wis. 2d 573, ¶ 73; *Maurin v. Hall,* 2004 WI 100, ¶ 106, 274 Wis. 2d 28, 682 N.W.2d 866; *Doering v. WEA Ins. Grp,* 193 Wis. 2d 118, 131, 532 N.W.2d 432 (1995) (citing *Szarzynski v. YMCA, Camp Minikani,* 184 Wis. 2d 875, 886, 517 N.W.2d 135 (1994)); *see also Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370–72, 293 N.W.2d 504 (1980).

[9] *Maurin,* 274 Wis. 2d 28, ¶ 106 (citations omitted).

The court sometimes uses a five-part test in analyzing equal protection challenges. The five-part test is derived from cases involving a challenge to a law on the grounds that it is a special law. *See, e.g., Johnson v. Milwaukee,* 88 Wis. 383, 60 N.W. 270 (1894) (setting forth the first four factors in the five-part test in determining constitutionality based on the challenge that a law was a special law); *Boyd v. City of Milwaukee,* 92 Wis. 456, 66 N.W. 603 (1896) (challenge under constitutional prohibition of special laws); *Risch v. Bd. of Trustees of Policeman's Pension Fund,* 121 Wis. 44, 98 N.W. 954 (1904) (establishing the fifth criterion in deciding whether the challenged law was a general or special law); *Brown v. Haney,* 190 Wis. 285, 209 N.W. 591 (1926) (uniformity challenge based on classifications of school districts).

In *Ford Hopkins Co. v. Mayor & Common Council of City of Watertown,* 226 Wis. 215, 276 N.W. 311 (1937), the court first applied the five-part test rooted in *Johnson v. City of Milwaukee,* 88 Wis. 383, to an equal protection challenge.

For early cases using the rational basis approach in equal protection challenges, see *State v. Whitcom,* 122 Wis. 110, 118, 99 N.W. 468 (1904) (equal protection "permits separation of [property or persons] into classes of property or persons similarly conditioned or situated, having characteristics legitimately distinguishing the members of one class from those of another in respects germane to some general and public purpose and object of the particular legislations."); *Milwaukee Sales & Investment Co. v. Railroad Comm'n of Wis.,* 174 Wis. 458, 465, 183 N.W. 687 (1921) (equal protection action holding that "[t]he classification

129

¶ 98. The legislature did not explicitly set out its purpose in enacting 2007 Wis. Act 86. I will therefore search for a purpose that will uphold the statute's constitutionality.

¶ 99. A legitimate purpose of this law is to increase the efficiency of the tax assessment challenge process for taxpayers and taxation districts. An additional purpose, as indicated by the legislative history, is to provide a system that will reduce the number of actions brought under § 74.37.[10]

¶ 100. In *Nankin,* we determined that a classification based strictly on county population was not germane to the purpose of judicial efficiency, or faster and cheaper resolution of assessment challenges for taxpayers (and taxation districts). In large part this conclusion was based on the fact that those same purposes are similarly applicable to all taxpayers regardless of the population of the county in which the property is located.

¶ 101. Here, the analysis is necessarily different. The classification is not based strictly on a county population number. Rather, the classification is based on the choice of a taxation district.

made by the act fails, in that it is not based on characteristics legitimately distinguishing the members of one class from those of the others in respects germane to the public purpose or object of this legislation . . . ."); *In re Christoph,* 205 Wis. 418, 421, 237 N.W. 134 (1931) ("[The] equality rule of the Constitution permits separation into classes if they have characteristics legitimately distinguishing the members of one class from another in respects germane to some public purpose.").

[10] "We're trying to reduce the number of assessment appeals that go to Circuit Court by creating an optional Board of Review process that municipalities could choose to adopt." E-mail from Denise Solie of Rep. Mark Gottlieb's office to Joseph Kreye re: Drafting Request - Board of Review, drafting file for 2007 Wis. Act 68, Wisconsin Legislative Reference Bureau, Madison, Wis.

¶ 102. Put simply, there is a legitimate government interest in efficiently handling tax assessment challenges. Giving municipalities a choice between two comprehensive procedures advances this purpose, because it allows each taxation district to determine which procedure is more efficient under its unique circumstances. As pointed out by the circuit court, one unique factor is the number and percentage of commercial and residential properties located in the taxation district. Apparently, more challenges can be expected regarding commercial properties.

¶ 103. While the purpose of 2007 Wis. Act 86 is not expressly stated, efficiency in resolving tax assessment challenges is seemingly the driving force (both for the taxation district and the taxpayer) in creating this new optional system. Providing municipalities with the option to determine which of two procedures will most efficiently resolve tax assessment challenges based on various local factors (like the number of residential and commercial properties) bears a rational relationship to the government interest in creating an efficient system before the Board of Review and the courts for tax assessment challenges.

¶ 104. The majority opinion rebukes Milwaukee's argument that the procedures under 2007 Wis. Act 86 are "faster, more efficient, [and] more cost-effective" by suggesting that if that were the case the legislature could simply repeal § 74.37(3) and universally apply the procedure created by 2007 Wis. Act 86. Majority op., ¶ 72.

¶ 105. The legislature most certainly has the power to do so. However, although the procedure created in 2007 Wis. Act 86 may be faster, more efficient, and more cost-effective for Milwaukee, other taxation districts such as Green Bay, Richland Center, or the

131

Village of Shorewood may come to a different conclusion based on the nature of the property and tax assessment challenges. Therefore, the legislature made a policy choice to provide taxation districts with an option of two alternative procedures as opposed to mandating one or the other procedure for all taxation districts.

¶ 106.   Contrary to the majority's conclusions, I cannot conclude that the legislation is "arbitrary," because it leaves for the taxation district the choice of how a taxpayer should proceed to challenge an assessment.[11] The state legislature provides options to local government in a number of areas.[12] And as with all policy decisions vested in the representative branches of government, the recourse for taxpayers unhappy with the policy decisions of their representatives rests in the ballot box.

¶ 107.   I conclude that the legislature could rationally conclude that the uniqueness and variety of the taxation districts in Wisconsin provide ample distinguishing characteristics that support providing this option to advance the purpose of establishing a more efficient system for tax assessment challenges.

### III

¶ 108.   The circuit court declared unconstitutional only Wis. Stat. § 74.37(4)(c) and (4)(d) as amended and

---

[11] Majority op., ¶¶ 71–72.

[12] These options run the gamut of issues that effect local governance, from the most fundamental, the organizational structure of local government, Wis. Stat. §§ 64.01 & 64.25, or the number of alders, Wis. Stat. § 64.39, to more specific issues that affect residents and businesses within a municipality. *See, e.g.,* Wis. Stat. § 66.0615 (establishment of room tax); Wis. Stat. § 66.0405 (system for removal of rubbish).

created by 2007 Wis. Act §§ 8 and 9. In contrast, the majority opinion invalidates the entire 2007 Wis. Act 86 by stating: "[T]he legislature clearly did not intend to create a situation where enhanced board of review and enhanced certiorari procedures would be available in a municipality where de novo review was also available." Majority op., ¶ 79. I disagree with the majority opinion.

¶ 109. Severability is favored. Wis. Stat. § 990.001(11). The presumption is in favor of severability.[13]

¶ 110. There seems to be no dispute in the present case that if the invalid part of 2007 Wis. Act 86 falls away, the remainder can be fully operative.

¶ 111. The question then becomes whether it is "evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not . . . ."[14]

¶ 112. Nothing in the text of 2007 Wis. Act 86 or the legislative history of the Act makes it "evident" that the legislature intended that the Act not be severable.

¶ 113. For the reasons set forth, I cannot join the majority's declaration that 2007 Wis. Act 86 violates the Wisconsin Constitution. Further, I disagree with the majority's declaration that the provisions of 2007 Wis. Act 86 are not severable. Accordingly, I dissent.

¶ 114. I am authorized to state that Justice ANN WALSH BRADLEY and Justice N. PATRICK CROOKS join this dissent.

---

[13] *State v. Janssen,* 219 Wis. 2d 362, 379, 580 N.W.2d 260 (1998).

[14] *Nankin,* 245 Wis. 2d 86, ¶ 49 (quoted source omitted).