**PREMIER BANK, N.A., Plaintiff and Appellant,**

v.

**Robert MAHONEY, Defendant,**

v.

**Michael D. MAHONEY, Intervenor and Appellee.**

No. 18548.

Supreme Court of South Dakota.

Considered on Briefs on April 28, 1994.

Decided Aug. 17, 1994.

John M. Wilka of Christenson, Wilka, Haugen and Kirby, Sioux Falls, for plaintiff and appellant.

Rita Allen of Hagen, Wilka and Archer, Sioux Falls, for intervenor and appellee.

WUEST, Justice.

Michael Mahoney's brother, an invalid, entered a hospital and left his pickup on Michael's property. Premier Bank (the Bank) was the lien holder on the pickup. Despite the Bank's lien, Michael acquired an abandoned motor vehicle title to the pickup. In this decision, we hold that the trial court's findings of fact are insufficient to support its conclusion of law that Michael acquired a valid abandoned motor vehicle title to the vehicle. Accordingly, we reverse and remand to the trial court for further proceedings.

### FACTS

In 1990, Michael's brother, Robert (Robert), purchased a new Ford pickup in Louisiana. Robert is paralyzed from the neck down and his father served as his driver. Robert and his father moved to South Dakota sometime after the purchase of the pickup.

Robert's father died in January 1993 and Robert entered a hospital for permanent care. After his father's death, Robert's mother phoned and advised the Bank that there would be no further payments on the vehicle and that the Bank should pick it up. Because there was no response to the first phone call, Robert's mother phoned the Bank two weeks later and once again asked that the vehicle be picked up. Again, there was no response to the mother's request.

In the meantime, the pickup was stored in a garage on Michael's property. On April 4, 1993, Michael sent a certified letter to the Bank's loan department. In his letter, Michael claimed the Bank owed him a storage fee for the pickup in the amount of $1,335.00. Michael's letter also advised the Bank that if it did not respond to his letter within thirty days he would file for title to the pickup.

On April 9, Michael sent the Bank a "Notice of Abandoned Motor Vehicle," by certified mail. The notice formally advised the Bank that Robert's vehicle was abandoned on Michael's property, gave Michael's address and phone number and further advised that a storage fee of $15 per day was being assessed. The notice also outlined South Dakota law on abandoned motor vehicles and informed the Bank that, as lien holder, it should send written notice of reclamation within thirty days to Michael and to the State Division of Motor Vehicles. There is no finding of fact that the Bank made any response to this notice. Michael subsequently applied for an abandoned motor vehicle title to the pickup and paid taxes and fees in the amount of $445.05.

After Michael acquired title to the pickup, the Bank brought a claim and delivery action against Robert to recover the vehicle. Michael was allowed to intervene in the action and a hearing was held. After the hearing, the trial court entered findings of fact, conclusions of law and a judgment declaring Michael the owner of the pickup by virtue of the Bank's abandonment of the vehicle. The Bank appeals.

### ISSUE

DO THE TRIAL COURT'S FINDINGS OF FACT SUPPORT ITS CONCLUSIONS OF LAW CONCERNING MICHAEL'S OWNERSHIP OF THE PICKUP?

The Bank argues that it did make various efforts to recover Robert's pickup that were thwarted by Michael. However, the Bank failed to propose findings of fact and conclusions of law and also failed to file objections to the trial court's findings of fact and conclusions of law. "The failure of an appellant to object to findings of fact and conclusions of law and to propose his or her own findings, limits review to the question of whether the findings support the conclusions of law and judgment." *Huth v. Hoffman*, 464 N.W.2d 637, 638 (S.D.1991). Therefore, our review in this case is limited to determining whether the trial court's findings of fact support its conclusion of law regarding Michael's acquisition of a valid abandoned motor vehicle title to Robert's pickup.

Two statutes outline the procedure to obtain an abandoned motor vehicle title: SDCL 32–36–8 and 32–36–9. At the time of the trial court proceedings on this matter *, SDCL 32–36–8 provided in pertinent part:

Within ten days after any abandoned or junk motor vehicle or other scrap metal has been removed, the removal agency shall send written notice by certified mail to the registered owner, if any, of the abandoned or junk motor vehicle or scrap metal and to all readily identifiable lien holders of record at their last known address. The notice shall set forth the date and place of the taking, the year, the make, model and serial number of the abandoned motor vehicle and the place where the vehicle is being held, and shall inform the owner and any lien holders of their right to reclaim the vehicle under § 32–36–9. The notice shall be on a form provided by the department of revenue.

SDCL 32–36–9 provides:

Notwithstanding any statutes to the contrary, title to any abandoned or junk motor vehicle or other scrap metal shall vest in the removal agency after a period of thirty days from the date on which the notice was sent under § 32–36–8 [i.e., notice of removal of abandoned motor vehicle]. The record holder of title or the lienholder may reclaim the motor vehicle or other scrap metal. The lienholder and record holder of title shall notify the department in writing within thirty days of their intent to reclaim the motor vehicle. However, if the record holder of title fails to claim and remove the motor vehicle or other scrap metal within thirty days after mailing of notice, title to the vehicle is irrevocably vested in the removal agency.

■■■ Statutes are to be accorded their plain meaning and effect. *State v. Ohlmann,* 444 N.W.2d 377 (S.D.1989). A plain reading of these two provisions reveals several requirements that must be met before a valid abandoned motor vehicle title can be obtained: first, the motor vehicle must be "abandoned;" second, the motor vehicle must

be "removed;" third, the motor vehicle must be removed by a "removal agency;" and, fourth, the removal agency must send written notice of the removal to all readily identifiable lien holders of record. If these requirements are fulfilled, title to the abandoned motor vehicle is irrevocably vested in the "removal agency." SDCL 32–36–9.

■■■ Applying the above requirements in the instant case, we first find that there are no findings of fact to support a conclusion of law that Robert's pickup was "abandoned." SDCL 32–36–2(1) defines an "abandoned motor vehicle" as, "any motor vehicle left on a public street or highway or left on private property without the permission of the landowner or tenant[.]" There is no finding of fact in this case that Robert left his pickup on Michael's property without Michael's permission. The trial court did find that, "at the time the Bank *failed to pick up* the vehicle it *became* abandoned and was left on private property without the permission of the landowner or the tenant." (emphasis added). However, this finding presupposes that the pickup was already on Michael's property when Michael withdrew his permission for storage of the vehicle. Therefore, the unanswered question is, "who left the pickup on Michael's property in the first place and did that person have Michael's permission to leave the vehicle on his property?" If so, the vehicle was not, "left on private property without the permission of the landowner or tenant," and was not abandoned. SDCL 32–36–2(1).

Second, there are no findings of fact whatsoever that would support a conclusion of law that Robert's pickup was "removed." There is no statutory definition of "removed" as it is used in SDCL 32–36–8. The general meaning of the word "removed" is, "to move (something) from where it is; take away or off ... to move away, as to another residence[.]" Webster's New World Dictionary of the American Language 506 (Rev. ed. 1975). Here, there are no findings of fact that after Robert's pickup was left on Mi-

---

* SDCL 32–36–8 was amended during the 1994 legislative session in a manner not relevant to this decision. 1994 S.D.Sess.L. ch. 264, § 5. All references to SDCL 32–36–8 in this decision are to its text prior to the 1994 amendment. *See,* SDCL 32–36–8 (Supp.1993).

chael's property, the pickup was moved to another place or location.

Third, there are no findings of fact to support a conclusion of law that Robert's pickup was removed by a "removal agency." The term "removal agency" is defined by SDCL 32–36–2(4) as:

> any public body, private or nonprofit organization authorized to remove and salvage abandoned and junk motor vehicles and other scrap metals. The removal agency may be authorized by chapter 32–30 to remove vehicles, may be hired or appointed by a public body or may be in the business of removing or salvaging vehicles[.]

Here, there are no findings that Robert's pickup was removed by a public body or by a private or nonprofit organization authorized to remove and salvage abandoned and junk motor vehicles and other scrap metals. Even conceding that Michael might be able to fall under the umbrella of a "private organization," there are no findings that Michael was authorized by *anyone* to remove Robert's pickup.

Authorization to act as a "removal agency" can be provided by SDCL ch. 32–30. SDCL 32–36–2(4). However, the applicable provisions of SDCL 32–30 address the authority of law enforcement officers to order the removal of abandoned motor vehicles. *See,* SDCL 32–30–12 through 32–30–18. There are no findings of fact that Michael was directed by any law enforcement officer to remove Robert's pickup. Authorization to act as a removal agency is also provided to those hired or appointed by public bodies or those in the business of removing or salvaging vehicles. SDCL 32–36–2(4). However, once again, there are no findings of fact that Michael was hired or appointed by a public body to remove Robert's pickup or that Michael was in the business of removing or salvaging vehicles. Accordingly, the trial court's findings of fact fail to support any conclusion of law that Robert's pickup was removed by a "removal agency."

Fourth, there are no findings of fact to support a conclusion of law that a "removal agency" sent written notice by certified mail to the Bank of the removal of Robert's pick-

up. SDCL 32–36–8. Since there are no findings of fact in this case to support a conclusion of law that Michael was a "removal agency," there are also no findings of fact to support a conclusion of law that Michael, acting as a "removal agency," sent the required notice of removal to the Bank.

In addition to the requirements addressed above, we note that the abandoned motor vehicle title that is awarded in this procedure is awarded to the "removal agency." SDCL 32–36–9. Once again, since there are no findings of fact in this case to support a conclusion of law that Michael was a "removal agency," there are no findings to support a conclusion that an abandoned motor vehicle title was vested in Michael as a "removal agency."

Based upon the above analysis, we conclude that the trial court's findings of fact do not support its conclusions of law concerning Michael's acquisition of an abandoned motor vehicle title to Robert's pickup. The judgment awarding Michael ownership of the pickup is reversed and the trial court is directed to enter judgment for the Bank.

Reversed and remanded.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

Rather than to base this decision heavily upon the premise that Michael was not a "removal agency," per SDCL 32–36–2(4), the more basic and sound reason to reverse should be employed, namely that the vehicle was not an abandoned motor vehicle.

I concur in the reversal but principally upon the basis that this motor vehicle was left on the family farm in rural Hudson, South Dakota by Michael Mahoney's brother, Robert Mahoney, the latter gentleman being in the Veteran's Administration Hospital at Sioux Falls, South Dakota, paralyzed from the neck down.

An "abandoned vehicle," under South Dakota law, does not envision abandonment

where one brother takes care of another brother's motor vehicle upon the family farm, and dramatically where the brother-owner is paralyzed in the geographically close VA Hospital. SDCL 32–36–2(1) expresses:

"Abandoned motor vehicle," any motor vehicle left on a public street or highway or left on private property *without the permission of the landowner or tenant* [.] (Emphasis added.)

Michael testified in these proceedings that he did not consider the vehicle to be "abandoned" *until he decided* that the Bank owed him over $1,300.00 for storage on the vehicle. Michael was not the owner, nor did he have a financial interest therein; the bank had the financial interest. Michael cannot legally formulate an intention to abandon property which does not belong to him. "An intention to abandon is an essential element of abandonment, and there can be no abandonment without such intention." 1 C.J.S. *Abandonment* § 5 (1985). In *Cundy v. Weber*, 68 S.D. 214, 300 N.W. 17, 22 (1941), we held that "Abandonment of a property right results from a concurrence of an intention to surrender, and the actual relinquishment thereof. Conduct may support an inference of such an intention." We have neither element before us.

SDCL ch. 32–36 pertains to "Abandoned, Derelict, and Junk Motor Vehicles and Scrap Metals." Said chapter is applicable here. Thereunder, "removal agency" includes, by definition per SDCL 32–36–2, a "private organization." However, SDCL ch. 32–30 is applicable to "Stopping and Parking Restrictions," such as removal of abandoned vehicles (SDCL 32–30–13); vehicles unattended for more than 24 hours (SDCL 32–30–12); vehicles blocking traffic or wrecked vehicles (SDCL 32–30–14). A "removal agency" under SDCL 32–30 is the highway patrol, sheriff, or peace officer (including a municipal peace officer; see SDCL 32–30–12.1). My point is this: If a farmer or rancher and his family are unwanted recipients of an abandoned vehicle on their ranch or farm in a rural setting or dwellers in a city lot, they are "a private organization;" the highway patrol, sheriff, or peace officer are not exclusively the "removal agency." As the statute

reads, the "removal agency" can be a "private or nonprofit organization."

Therefore, I would put my academic eggs in this basket: A fair review of the facts in this case leads one to the conclusion that the motor vehicle was never abandoned. And I would leave the "removal agency" dissertation in the hen house.