#26755-rev & rem-SLZ

**2014 S.D. 23**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TRI-CITY ASSOCIATES, LP,                     Plaintiff and Appellant,

    v.

BELMONT, INC., a South Dakota
corporation and JOSEPH Z. ERBA,              Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT A. MANDEL
Judge

* * * *

MARK F. MARSHALL of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota                     Attorneys for plaintiff
                                             and appellant.


STAN H. ANKER
JORDAN D. BORDEWYK of
Anker Law Group, PC
Rapid City, South Dakota                     Attorneys for defendants
                                             and appellees.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 18, 2014

OPINION FILED **04/16/14**

#26755

ZINTER, Justice

[¶1.] Belmont, Inc. leased unfinished commercial real-estate space from Tri-City Associates, L.P. The parties later filed claims against each other for breach of the lease. The circuit court entered a judgment in favor of Belmont on all claims. The court reasoned that although both parties failed to fulfill certain obligations under the lease, Tri-City materially breached the lease, thus excusing Belmont from performance. Tri-City appeals contending that its failure to complete its initial construction obligations and its failure to deliver the space in "broom clean" condition were excused by the lease's "as is" clause. Tri-City also contends that it was excused by Belmont's failure to give notice of breach and an opportunity to cure. We reverse and remand for the circuit court to enter findings of fact and conclusions of law on the effect of Belmont's failure to give notice of breach and an opportunity to cure.

*Facts and Procedural History*

[¶2.] Tri-City was the owner and developer of a shopping center in Rapid City. Belmont was formed to operate a meat and produce business in Rapid City. In May 2006, Belmont and Tri-City entered into a commercial real-estate lease for a space in the shopping center that Tri-City was developing. The lease was to start on August 1, 2006.

[¶3.] A "work letter" attached to the lease allocated some of the initial construction work between Tri-City and Belmont. That work was necessary to ready the premises for occupancy and use in Belmont's meat and produce business. The work letter also required Tri-City to provide the premises in "broom clean"

-1-

condition. The work letter further recited that Belmont had inspected the premises and was taking them in "as is" condition.[1] Nevertheless, there is no dispute that Tri-City did not complete its allocated portion of the initial construction, nor did it deliver the premises in broom clean condition by August 1, 2006.

[¶4.] Even though the August 1 start date passed without Tri-City fulfilling its obligations, Belmont worked with Tri-City, attempting to complete construction and ready the premises for occupancy and use. However, the parties encountered numerous problems and delays that rendered their attempts unsuccessful. In December 2006, Tri-City proposed moving the start date of the lease from August 1, 2006, to January 15, 2007. Belmont did not sign the proposed modification agreement.

---

1. The work letter provided, in relevant part:

> **LANDLORD'S WORK** which Landlord is obligated to initially construct and pay for, shall consist of the following work: [listing construction obligations]. Except for Landlord's obligation to put the Premises in a "broom clean" condition, Tenant agrees that Landlord has no other construction obligations, other than the aforementioned, with respect to Tenant's initial occupancy of the Premises and that Tenant has inspected the Premises and is taking the Premises in its "AS IS" condition, with no representations or warranties of any kind with respect to the condition of the Premises and its building systems or its suitability of the Premises for Tenant's business.

> **TENANT'S WORK**, for which Tenant is obligated to construct and pay for, shall consist of the items of work described below, and all other work necessary to complete the improvements in the Premises in accordance with the Approval Tenant Plans, except any items of work expressly included in Landlord's Work. Tenant to invest a minimum of $50,000.00 in renovation/fixturing costs and provide evidence of same to Landlord.

[¶5.] In March 2007, Tri-City served Belmont with a notice to quit and vacate. In April 2007, Tri-City sued to evict Belmont and recover damages for unpaid rent and other Belmont obligations under the lease. In July 2007, based on a stipulation between the parties, the circuit court awarded possession of the premises to Tri-City.

[¶6.] In October 2007, Belmont filed an amended answer and added a counterclaim. Belmont denied liability for damages and claimed that Tri-City materially breached the lease by failing to fulfill its initial construction and broom clean obligations. Tri-City responded that even if it failed to perform those obligations, Belmont was liable for rent, and Belmont's counterclaim was barred because Belmont accepted the property as is. Tri-City also contended that Belmont failed to provide Tri-City with written notice of its alleged breach and an opportunity to cure as required by another provision in the lease.[2]

---

2. The notice-and-cure provision provided, in relevant part:

> **Landlord's Default.** Landlord shall be in default under this Lease upon . . . (b) the failure of Landlord to observe, keep or perform any of the other terms, covenants, agreements or conditions contained in this Lease on the part of Landlord to be observed or performed and such failure continues for a period of thirty (30) days after written notice by Tenant to Landlord or, if such failure is not reasonably susceptible to cure within thirty (30) days, then within a reasonable period of time so long as Landlord shall have commenced to cure such failure within such thirty (30) day period and shall thereafter diligently pursue such cure to completion. Tenant may not exercise any remedies available to it under this Lease, at law or in equity until Landlord has been afforded the cure periods described in this Paragraph 48 . . . .

[¶7.] After a court trial, the circuit court found that Tri-City failed to deliver the premises in broom clean condition and failed to complete its allocated portion of the initial construction. The court concluded that Tri-City's failures were material breaches that excused Belmont from liability and rendered Tri-City liable on Belmont's counterclaim. The court made no findings of fact or conclusions of law on Tri-City's claim that Belmont's failure to follow the lease's notice-and-cure provision barred Belmont's defense and counterclaim.

[¶8.] Tri-City appeals, contending that Belmont's defense and counterclaim were barred as a matter of law by: (1) the lease provision in which Belmont accepted the premises as is, and (2) Belmont's failure to give Tri-City notice of its alleged breach and an opportunity to cure.

*Decision*

[¶9.] The questions on appeal involve the interpretation of the lease. A lease is a contract, so contract principles govern its interpretation. *See Icehouse, Inc. v. Geissler*, 2001 S.D. 134, ¶ 21, 636 N.W.2d 459, 465 ("As a lease is a contract we will follow the law of contract in regard to breach." (citation omitted)). Contract interpretation is a question of law that we review de novo. *Poeppel v. Lester*, 2013 S.D. 17, ¶ 16, 827 N.W.2d 580, 584 (citation omitted).

[¶10.] Tri-City first contends that Belmont's execution of the lease containing the as is clause barred a judgment in favor of Belmont as a matter of law. We disagree.

[¶11.] The goal of contract interpretation is to determine the parties' intent. *See id.* To determine intent, we look "to the language that the parties used in the

contract[.]" *Id.* (quoting *Detmers v. Costner*, 2012 S.D. 35, ¶ 20, 814 N.W.2d 146, 151). We do not, however, interpret "particular words and phrases . . . in isolation." *Casey Ranch Ltd. P'ship v. Casey*, 2009 S.D. 88, ¶ 11, 773 N.W.2d 816, 821 (quoting *In re Dissolution of Midnight Star Enters.*, 2006 S.D. 98, ¶ 12, 724 N.W.2d 334, 337). Nor do we interpret language "in a manner that renders a portion of [the contract] meaningless." *Estate of Fisher v. Fisher*, 2002 S.D. 62, ¶ 14, 645 N.W.2d 841, 846 (citation omitted). Instead, we interpret the contract to give "a reasonable and effective meaning to all [its] terms[.]" *Casey Ranch*, 2009 S.D. 88, ¶ 11, 773 N.W.2d at 821 (quoting *Midnight Star*, 2006 S.D. 98, ¶ 12, 724 N.W.2d at 337).

[¶12.] In this case, the lease obligated Tri-City to deliver the premises to Belmont on the start date in broom clean condition, with Tri-City's allocated portion of the initial construction completed. Tri-City does not dispute that it failed to fulfill those obligations. Instead, Tri-City contends that it was essentially absolved of responsibility to satisfy those obligations because Belmont accepted the premises in as is condition when it signed the lease in May 2006. Tri-City's position does not give a reasonable and effective meaning to all terms of the lease.

[¶13.] The as is clause appears in the same paragraph as the clauses requiring Tri-City to provide certain construction and to present the premises in broom clean condition. Yet Tri-City's interpretation would read the as is clause to abrogate its construction and broom clean obligations, rendering the broom clean and construction clauses meaningless. Tri-City's interpretation also fails to recognize that the parties signed the lease in May 2006, but use and occupancy of the premises were not contemplated until August 1, 2006. Therefore, although the

lease provided that Belmont was taking the premises in as is condition on the date the lease was executed, it expressly contemplated that Tri-City would provide initial construction and present the premises in broom clean condition after the lease was executed. Tri-City's interpretation would abrogate its future obligations by signing the lease, an absurd result that could not have been intended.

[¶14.] A harmonious reading of all provisions reflects that the as is clause did not abrogate Tri-City's post-execution obligations to perform initial construction and to deliver the premises in broom clean condition. Indeed, the work letter specifically provided that Belmont was taking the premises as is "[e]xcept for" Tri-City's obligation to put the premises in broom clean condition and "other than [Tri-City's] aforementioned" allocated construction obligations. We conclude that the as is clause did not bar the judgment in favor of Belmont as a matter of law.

[¶15.] Tri-City alternatively argues that Belmont's defense and counterclaim were barred by the notice-and-cure provision. Tri-City emphasizes that this provision required Belmont to give Tri-City written notice and time to cure any default before Belmont could "exercise any remedies available to it[.]" Tri-City contends that because Belmont did not comply with this provision, a judgment in Belmont's favor was barred as a matter of law.

[¶16.] Belmont responds first by arguing that our standard of review is limited to determining whether the circuit court's findings of fact support its conclusions of law—Belmont claims they do. Belmont contends that limited review is mandated under *Canyon Lake Park, L.L.C. v. Loftus Dental, P.C.*, 2005 S.D. 82, 700 N.W.2d 729, because Tri-City did not submit both "its own findings of fact and

conclusions of law *and* object to the trial court's findings of fact and conclusions of law." Belmont misreads *Canyon Lake.*

[¶17.]  In *Canyon Lake,* "neither party specifically objected to [the circuit court's] findings of fact or conclusions of law, nor did they submit their own findings of fact or conclusions of law." *Id.* ¶ 10.  We held that the failure to *either* object to *or* propose findings or conclusions limited our "review to the question of whether the findings support[ed] the conclusions of law and judgment." *Id.* ¶ 11 (quoting *Premier Bank, N.A. v. Mahoney,* 520 N.W.2d 894, 895 (S.D. 1994)).  We also cited *Selway Homeowners Association v. Cummings,* for a similar holding, explaining that because "the appellant failed to *either* object to findings of fact or conclusions of law proposed by the appellee, *or* propose findings of fact and conclusions of law of their own," our review was limited to determining "whether the findings supported the conclusions of law and judgment[.]" *Canyon Lake,* 2005 S.D. 82, ¶ 11, 700 N.W.2d at 733 (emphasis added) (citing *Selway,* 2003 S.D. 11, ¶ 14, 657 N.W.2d 307, 312).

[¶18.]  Thus, under our cases, there are two methods to preserve our ordinary standard of review.  Review is not limited unless the appealing party failed to object to *and* failed to propose findings of fact and conclusions of law.  Either alternative satisfies the purpose of the rule, which is to bring the issue to the attention of the circuit court for a ruling.

[¶19.]  In this case, although Tri-City did not object to the circuit court's findings of fact and conclusions of law, Tri-City did propose findings and conclusions on the notice-and-cure issue.  Because Tri-City proposed findings of fact and

conclusions of law on this issue, our review is not limited. We review findings of fact for clear error and conclusions of law de novo. *See Eagle Ridge Estates Homeowners Ass'n v. Anderson*, 2013 S.D. 21, ¶ 12, 827 N.W.2d 859, 864 (citing SDCL 15-6-52(a)); *Detmers*, 2012 S.D. 35, ¶ 9, 814 N.W.2d at 149.

[¶20.] Belmont next argues that Tri-City cannot rely on the notice-and-cure provision for two reasons. First, Belmont contends that by bringing this suit, Tri-City demonstrated that it had no intent to perform its obligations and cure its default. Second, Belmont contends that even if Tri-City can rely on the notice-and-cure provision, Belmont's motion to amend its answer and assert a counterclaim provided the required notice of Tri-City's defaults. Belmont points out that after it moved to add the counterclaim, which identified Tri-City's defaults, Tri-City had sufficient time to cure but did not.

[¶21.] Tri-City requested that the circuit court rule on the notice-and-cure issue. Tri-City proposed findings of fact and conclusions of law to the effect that Belmont's claims were barred by the notice-and-cure provision. Although this issue was presented to the circuit court, the court did not address the effect of the notice-and-cure provision on Belmont's counterclaim.

[¶22.] The circuit court's failure to address the notice-and-cure issue is problematic because some courts have concluded that the failure to abide by a notice-and-cure provision precludes judicial relief. For example, in *Kinstler v. RTB South Greeley, LTD. LLC*, the Wyoming Supreme Court affirmed a trial court's rejection of a tenant's claim that he was excused from paying rent because his landlord materially breached a lease. 160 P.3d 1125, 1126 (Wyo. 2007). The court

noted that the tenant correctly argued "that, under some circumstances, one party's material breach of an agreement may excuse the other party's performance under that agreement." *Id.* at 1127 (citation omitted). But the court explained that "[w]hen a party fails to provide notice of a material breach, if required by the terms of the lease, reliance on that breach to excuse contractual performance is improper." *Id.* at 1128 (citation omitted); *see also Huttenbauer Land Co. v. Harley Riley, Ltd.*, No. C-110842, 2012 WL 4760871, at *2 (Ohio Ct. App. Oct. 5, 2012) (unreported opinion) ("Because the lease provides that [the landlord] is entitled to notice and an opportunity to cure an alleged default, and because such notice and opportunity were not provided . . ., [the landlord's] default did not result in a breach of the lease and its actions could not have served as a basis to excuse [the tenant's] performance under the lease."); *Hoover v. Wukasch*, 274 S.W.2d 458, 460 (Tex. Civ. App. 1955) (holding that a lease's notice-and-cure provision, requiring that the tenant give written notice to the landlord about needed roof repairs, precluded the tenant from withholding rent because the tenant had failed to give required notice).

[¶23.] Other courts, however, have concluded that a failure to strictly comply with a notice-and-cure provision does not necessarily preclude recovery. In an unreported opinion, the Ohio Court of Appeals, citing a number of reported opinions, explained why such a provision may not preclude recovery:

> "Although courts generally should give effect to the plain meaning of the parties' unambiguously expressed intentions, in some circumstances, courts will not strictly enforce contractual language requiring notice in writing." [*Gollihue v. Nat'l City Bank*, 969 N.E.2d 1233, 1238 (Ohio Ct. App. 2011).] In those cases, a failure to provide notice according to the terms of the contract may not preclude recovery on the contract where the party has received actual notice. [*Id.* at 1238-39; *Adair v.*

> *Landis Props.*, No. 08AP-139, 2008 WL 4174130, at \*3-\*4 (Ohio
> Ct. App. Sept. 11, 2008); *Daniel E. Terreri & Sons, Inc. v.*
> *Mahoning Cnty. Bd. of Comm'rs*, 786 N.E.2d 921, 932 (Ohio Ct.
> App. 2003).] "The purpose of requiring written notice is not to
> be hypertechnical but, instead, to create certainty." [*McGowan*
> *v. DM Grp. IX*, 455 N.E.2d 1052, 1055 (Ohio Ct. App. 1982).]

*Marion Forum, L.L.C. v. Lynick Enters., Inc.*, No. 9-12-13, 2012 WL 6571388, at \*4-\*5 (Ohio Ct. App. Dec. 17, 2012) (finding that the record demonstrated that the landlord had received actual notice of maintenance issues, even though the tenant had failed to strictly comply with a notice-and-cure provision).

[¶24.]     Because of the conflicting authority and the circuit court's failure to address the notice-and-cure provision, we decline to review this issue. Further proceedings are necessary to answer unresolved questions such as substantial compliance, actual notice, and materiality. We reverse and remand for the entry of findings of fact and conclusions of law on the effect of Belmont's failure to give notice of breach and an opportunity to cure.

[¶25.]     Both parties have moved for appellate attorney's fees, and each has filed accompanying itemized statements of expenses. "[A]ttorney fees may only be awarded by contract or when explicitly authorized by statute." *In re Estate of O'Keefe*, 1998 S.D. 92, ¶ 17, 583 N.W.2d 138, 142 (quoting *Schuldies v. Millar*, 1996 S.D. 120, ¶ 37, 555 N.W.2d 90, 100). In this case, the lease governs attorney fees, and it provides that fees are recoverable by "the prevailing party." However, at this point, neither party has prevailed. We decline to award attorney's fees to either party.

[¶26.]     Reversed and remanded for further proceedings on the notice-and-cure provision of the lease.

#26755

[¶27.]    GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.