#26897-a-JKK
**2014 S.D. 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SHAWN TIBBS, VIRGIL STEMBAUGH,
GENE GULLICKSON and JANET
GULLICKSON,                                              Petitioners and Appellants,

    v.

MOODY COUNTY BOARD OF
COMMISSIONERS, sitting as
THE BOARD OF ADJUSTMENT,
and MUSTANG PASS, LLC,                                   Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA
* * * *

THE HONORABLE GREGORY J. STOLTENBURG
Judge
* * * *

MITCHELL A. PETERSON of
Davenport, Evans, Hurwitz & Smith, LLP
Sioux Falls, South Dakota                 Attorneys for petitioners
                                          and appellants.

JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise, Sauck & Hieb, LLP
Aberdeen, South Dakota                    Attorneys for appellee Moody
                                          County Board of Commissioners
                                          Sitting as Board of Adjustment.

JAMES S. SIMKO of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota                 Attorneys for appellee Mustang
                                          Pass, LLC.

* * * *

ARGUED ON MAY 28, 2014

OPINION FILED **07/09/14**

#26897

KONENKAMP, Justice

[¶1.] The Moody County Board of Adjustment granted a conditional use permit to allow a concentrated animal feeding operation in Moody County. Shawn Tibbs, Virgil Stembaugh, and Gene and Janet Gullickson (the Citizens) petitioned the circuit court for a writ of certiorari challenging the board of adjustment's decision to grant the conditional use permit. The Citizens also argued that the statutory scheme governing appeals to circuit courts from county-level decisions on conditional use permits violated their equal protection rights. The circuit court denied the writ and the Citizens appeal.

## Background

[¶2.] On January 16, 2013, Mustang Pass, LLC applied for a conditional use permit (CUP) to construct a concentrated animal feeding operation in Moody County. The zoning officer issued a written recommendation to the Moody County Board of Adjustment that the CUP be approved with the addition of six conditions. On January 23, 2013, the Moody County Board of Adjustment published a notice in the local newspaper announcing that a public hearing on Mustang's application would be held on February 5, 2013. At the hearing, the board received evidence, including testimony from Mustang's principals, the engineers who prepared the CUP, and members of the public. At a later meeting in March, the board approved Mustang's CUP. The board issued written findings and conditional use permit requirements, identified the board's jurisdiction to consider Mustang's application, outlined the procedural history on Mustang's CUP, certified Mustang's compliance with the rules governing conditional use requests, and imposed certain "special conditions and safeguards."

-1-

[¶3.]      The Citizens petitioned the circuit court for a writ of certiorari to invalidate Mustang's CUP.  They challenged the board's jurisdiction to consider Mustang's application, asserting that Moody County failed, in 2003, to properly enact its zoning ordinances.  These ordinances created the Moody County Board of Adjustment and gave it power to hear and consider CUPs.  In the Citizens' view, because the zoning ordinances were not properly enacted, all action taken by the Moody County Board of Adjustment since 2003 was void *ab initio*, including the decision by the board of adjustment to approve Mustang's CUP.  They also asserted that Moody County did not have legislative authority to delegate to the board of adjustment original jurisdiction to consider a CUP application, and therefore, the board's approval of Mustang's CUP was void.  Finally, the Citizens argued that SDCL chapter 11-2 and the statutory scheme governing appeals from CUP-related decisions at the circuit court level violates the Equal Protection Clause of the South Dakota Constitution because it gives some aggrieved parties a more favorable de novo review before the circuit court and other aggrieved parties less favorable review by writ of certiorari.  *See* S.D. Const. art. VI, § 18.

[¶4.]      After a hearing in September 2013, the circuit court issued a memorandum decision that was later incorporated into its findings of fact and conclusions of law.  The court found "no procedural defects" in Moody County's 2003 adoption of its zoning ordinances and accordingly ruled that the board of adjustment was validly created.  The court further concluded that Moody County did not improperly delegate its authority to the board of adjustment, even though SDCL 11-2-17.3 (the statute giving counties the power to designate the approving authority for CUPs) was not in effect at the time Moody County adopted its

ordinance. In examining SDCL chapter 11-2, the circuit court concluded that a harmonious and workable reading of the statutes necessitated the conclusion that the Moody County Board of Adjustment had both appellate and original jurisdiction.

[¶5.] On the Citizens' equal protection claim, the court detailed the legislative history leading to the inconsistent appellate processes from county CUP decisions. *See Armstrong v. Turner Cnty. Bd. of Adjustment*, 2009 S.D. 81, ¶¶ 10-11, 772 N.W.2d 643, 647-48. The court noted that in 2003, the Legislature amended SDCL 11-2-53 and gave boards of adjustment the power to consider certain CUP issues. Then, in 2004, the Legislature removed the statutory provision giving boards of adjustment the authority to approve CUPs. But the Legislature enacted SDCL 11-2-17.3 giving counties the power to designate the approving authority for CUPs. The Legislature did not make "any reference to an appeal procedure if the county-designated entity was not a board of adjustment." *See Armstrong*, 2009 S.D. 81, ¶ 10, 772 N.W.2d at 648. Therefore, "the same action of approving or denying a conditional use permit may have a different appeal procedure depending on which entity approves the permit." *Id.* ¶ 11.

[¶6.] The circuit court then applied the traditional two-part test for claims that a statute violates equal protection: (1) does the statute create an arbitrary classification among citizens, and (2) "if the classification does not involve a fundamental right or suspect group," is there a rational relationship "between a legitimate legislative purpose and the classification created"? *See In re Davis*, 2004 S.D. 70, ¶ 5, 681 N.W.2d 452, 454. On the first prong, the court concluded that, "[w]hen applied, the statute [SDCL 11-2-17.3] gives every county in South Dakota

the same opportunity to choose which entity they would like to place the conditional use authority in." Thus, the court found that the Legislature did not create a classification. The court ruled alternatively that even if the statute created a classification among citizens, the Citizens "would still fail to prove arbitrariness." As the court explained, "It makes sense to allow the individual counties the flexibility to determine the mechanism by which zoning issues are considered and appealed." The court highlighted the "great disparity between counties in this state," and opined that "[i]t may be appropriate to allow Moody County, or any county, different options when dealing with zoning issues." The Citizens' recourse, according to the court, "rests primarily in the ballot box."

[¶7.] Although the court found no arbitrary classification, it addressed the second prong — whether there is a rational relationship between a legitimate legislative purpose and the classification. The court determined that a legitimate legislative purpose existed in the allowance of flexibility to each county on zoning issues and that differing standards of review are rationally related to that purpose. It concluded that the Citizens failed to meet their burden that there is no rational relationship between the legitimate legislative purpose and the classification created and denied the Citizens' petition for a writ of certiorari.

[¶8.] On appeal, the Citizens assert that the statutory scheme applicable to the appeal procedure from a board of adjustment decision is unconstitutional in violation of the Equal Protection Clause and that the Moody County Board acted in excess of its jurisdiction, failed to pursue its authority in a regular manner, and failed to do an act required by law.

## Analysis and Decision

### 1. Equal Protection

[¶9.]     The Citizens argue that the writ of certiorari standard of review applied to a board of adjustment's CUP decision violates their right to equal protection of the law. *See* SDCL 11-2-61, -62. They claim an inequality exists because citizens in counties without a board of adjustment receive a more favorable de novo standard of review of CUP decisions at the circuit court level under SDCL 7-8-30, while citizens in counties with a board of adjustment receive a less favorable standard of review by writ of certiorari under SDCL chapter 11-2. The Citizens further contend that these differing standards of review at the circuit court level are arbitrary and in no way relate to county flexibility in handling local zoning issues. Although the Citizens insist that this implicates a fundamental right because their property rights are at stake, they claim alternatively that even if a fundamental right is not involved, there is no "legitimate legislative purpose for providing an absolute right to de novo review of CUP decisions to some citizens, while simultaneously restricting the review for other similarly situated citizens located in other counties."

[¶10.]     A statute's constitutionality and proper interpretation are questions we review de novo. *In re Z.B.*, 2008 S.D. 108, ¶ 5, 757 N.W.2d 595, 598 (citing *Buchholz v. Storsve*, 2007 S.D. 101, ¶ 7, 740 N.W.2d 107, 110). "Any legislative act is accorded a presumption in favor of constitutionality and that presumption is not overcome until the unconstitutionality of the act is clearly and unmistakably shown and there is no reasonable doubt that it violates fundamental constitutional principles." *Accounts Mgmt., Inc. v. Williams*, 484 N.W.2d 297, 299 (S.D. 1992)

(citations omitted). The constitutional question here is whether the Equal Protection Clause prohibits the differing standards of review applied to CUP decisions at the circuit court level. *See* SDCL 7-8-30 (appeal from a county decision); SDCL 11-2-61, -62 (appeal from a board of adjustment decision). The Equal Protection Clause of the South Dakota Constitution guarantees that "[n]o law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." S.D. Const. art. VI, § 18.

[¶11.] In deciding whether a statutory scheme comports with the Equal Protection Clause, we apply a two-part test. "First, we determine whether the statute creates arbitrary classifications among citizens." *Davis*, 2004 S.D. 70, ¶ 5, 681 N.W.2d at 454 (citing *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331, 333 (1975)). "Second, if the classification does not involve a fundamental right or suspect group, we determine whether a rational relationship exists between a legitimate legislative purpose and the classifications created." *Id.* (citing *Accounts Mgmt., Inc.*, 484 N.W.2d at 300).

[¶12.] On the first prong, we look to see whether "the statute applies equally to all people." *Accounts Mgmt., Inc.*, 484 N.W.2d at 300. While SDCL 11-2-17.3 on its face applies equally to all counties, in that each county is afforded the opportunity to designate the approving authority for a CUP, the statutes governing circuit court appeals of CUP decisions in effect sets up two classes of citizens. One class comprises citizens in a county that designated a board of adjustment to consider CUPs, thereby invoking the writ of certiorari review process in circuit court. *See* SDCL 11-2-61, -62. The second class comprises citizens in a county that

chose not to designate a board of adjustment, thereby invoking the de novo standard of review in circuit court. *See* SDCL 7-8-30; *see Armstrong*, 2009 S.D. 81, ¶¶ 10-11, 772 N.W.2d at 647-48.

[¶13.] The next inquiry is whether the classification is arbitrary. Equal protection of the law does not deny a state the right to make classifications in law, so long as those classifications are rooted in reason. *State v. Krahwinkel*, 2002 S.D. 160, ¶ 21, 656 N.W.2d 451, 460-61. Indeed, classification is the essence of legislation and the Legislature is not prohibited "from making classifications based upon difference in 'terms' surrounding individuals." *Accounts Mgmt., Inc.*, 484 N.W.2d at 300; *see also Clements v. Fashing*, 457 U.S. 957, 964, 102 S. Ct. 2836, 2845, 73 L. Ed. 2d 508 (1982). "A statute will not be declared invalid 'unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest.'" *Accounts Mgmt., Inc.*, 484 N.W.2d at 300 (citations omitted); *see also Davis*, 2004 S.D. 70, ¶ 4, 681 N.W.2d at 454. As the United State Supreme Court explained, "When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985) (internal citations omitted).

[¶14.] Here, although the classes of citizens appear to be arbitrarily classified — differing standards of review of CUP decisions based on whether the county has a board of adjustment or not — our review of the constitutionality of the statutory scheme is not isolated to a simple comparison of standards of review at the circuit court level. *See Sedlacek v. S.D. Teener Baseball Program*, 437 N.W.2d 866, 869

(S.D. 1989). On the contrary, we must examine the CUP processes as a whole to determine if the two classes of citizens are "postured in the same stance." *See Accounts Mgmt., Inc.*, 484 N.W.2d at 300. This is because "[e]qual protection of law requires that the rights of every person be governed by the same rule of law, *under similar circumstances.*" *Krahwinkel*, 2002 S.D. 160, ¶ 21, 656 N.W.2d at 460 (citation omitted).

[¶15.] In probing the circumstances surrounding a CUP decision by a board of adjustment compared to a CUP decision by a county commission, we note one procedural difference. In a county that designated a board of adjustment as the approving authority, SDCL 11-2-59 mandates that a "concurring vote of two-thirds of the members of the board of adjustment is necessary . . . to decide in favor of the applicant[.]" A decision before the county commission, on the other hand, requires only a simple-majority vote. *See* SDCL 7-8-18. Based on this statutory difference alone, the Legislature could have properly concluded that a decision by a board of adjustment should be afforded more deference at the circuit court level than a decision by a county commission, and therefore, these differing standards of review are not arbitrary.

[¶16.] Nonetheless, the Citizens contend that *Aberdeen*, 89 S.D. 412, 233 N.W.2d 331 and *Metropolitan Associates v. City of Milwaukee*, 796 N.W.2d 717 (Wis. 2011) support proof of arbitrary classifications. In *Meidinger*, the challenged statutory scheme created a classification affecting similarly situated citizens: a city with a municipal court could impose a greater penalty for the same municipal ordinance violation as compared to a city without a municipal court. The classification meant that a person convicted of the *same* infraction could be

subjected to a greater penalty depending on whether the city had a municipal court. 89 S.D. at 415, 233 N.W.2d at 333. Here, however, the classification created by the statutory scheme does not involve the *same* circumstances. Rather, the classification can be related to a "difference in 'terms' surrounding individuals," *see Accounts Mgmt., Inc.*, 484 N.W.2d at 300, based upon the fact an applicant seeking a CUP must obtain a super-majority vote of a board of adjustment versus a simple-majority vote of a county commission.

[¶17.] Likewise, the statutory scheme in *Metropolitan Associates* created a classification affecting similarly situated citizens: appellant taxpayers living in a municipality opting out of de novo review and appellant taxpayers living in a municipality not opting out. 796 N.W.2d at 724. The classification did not relate to any distinctions between the characteristics of the taxpayers. *Id.* at 733. According to the Wisconsin Court, "[t]axpayers in opt out municipalities are no different from taxpayers in all other municipalities, except for the different rights available to taxpayers in opt out municipalities at the Board of Review and circuit court review stages." *Id.* at 734. Here, however, the procedure in obtaining a CUP before a board of adjustment is different from the procedure before a county commission, making citizens appealing a board of adjustment's CUP decision in circuit court different from citizens similarly appealing a CUP decision from a county commission.

[¶18.] "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 1161, 25 L. Ed. 2d 491 (1970); *see also Heller v. Doe*, 509 U.S. 312, 321, 113 S. Ct. 2637, 2643,

125 L. Ed. 2d 257 (1993). The Legislature need not "'actually articulate at any time the purpose or rationale supporting its classification.'" *Z.B.*, 2008 S.D. 108, ¶ 9, 757 N.W.2d at 600 (quoting *Heller*, 509 U.S. at 320, 113 S. Ct. at 2642). Rather, "[i]n an equal protection challenge, '[t]he burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it.'" *Id.* ¶ 5 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S. Ct. 1001, 1006, 35 L. Ed. 2d 351 (1973) (citations omitted)). Here, the Citizens have failed to negate the conceivable set of facts providing the rational basis for the classification — the different procedural means by which a CUP decision reaches the circuit court. Although this classification might not be "made with mathematical nicety" and "in practice [may result] in some inequality," *see Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L. Ed. 369 (1911), there is a plausible reason for the differing standards of review and thus "our inquiry is at an end." *See United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179, 101 S. Ct. 453, 461, 66 L. Ed. 2d 368 (1980); *see also In re Certain Territorial Elec. Boundaries (Mitchell Area) F–3105*, 281 N.W.2d 65, 71 (S.D. 1979).

[¶19.]     We nonetheless address the second prong: whether a rational relationship exists between the legitimate legislative purpose and the classifications. The Citizens insist that a fundamental right is at stake because the board's decision implicated a property right and a right to access the courts. On the contrary, the issue before us is the statutory scheme governing CUP decisions, and therefore, the Citizens' constitutional question does not involve a fundamental right. *See Lindsey v. Normet*, 405 U.S. 56, 77, 92 S. Ct. 862, 876, 31 L. Ed. 2d 36 (1972) (no constitutional right to appellate review). Because a fundamental right is

-10-

not involved, we need only determine "whether a rational relationship exists between a legitimate legislative purpose and the classifications created." *See Davis*, 2004 S.D. 70, ¶ 5, 681 N.W.2d at 454. It is a legitimate legislative purpose to create different procedural means by which certain county authorities manage proceedings before them. This is not a case like *Metropolitan Associates* where Wisconsin enacted a statute giving counties the authority to decide what standard of review would be applied to landowner challenges of CUP decisions. 796 N.W.2d at 724. Rather, our case involves separate and distinct county procedures before different county government bodies, where dissimilar circumstances result in different standards of review at the circuit court level. We conclude that there is a rational relationship between a legitimate legislative purpose and the classifications.

## 2. Validity of Zoning Ordinance Creating the Board of Adjustment

[¶20.] The Citizens contend that Moody County did not properly establish its board of adjustment because the county failed to validly enact its zoning ordinances in 2003, when it did not hold two separate hearings as required by SDCL 11-2-18 through SDCL 11-2-20. Because of this failure, the Citizens aver that all action taken since 2003 by the Moody County Board of Adjustment is void, including its approval of Mustang's CUP.

[¶21.] Moody County responds that it complied with SDCL chapter 11-2 in 2003 when it adopted its zoning ordinances. It concedes that it did not hold two separate and distinct hearings, but asserts that nothing in chapter 11-2 required separate and distinct hearings. Because the planning commission and board of county commissioners each gave ten-days' notice of the public hearings, held the

public hearings, and adopted the 2003 zoning ordinances, Moody County maintains that the 2003 ordinances were validly enacted.

[¶22.]    We will sustain Moody County's actions "unless it did some act forbidden by law or neglected to do some act required by law." *See Armstrong*, 2009 S.D. 81, ¶ 12, 772 N.W.2d at 648 (citations omitted).  SDCL 11-2-18 provides:

> The planning commission shall hold at least one public hearing on the respective comprehensive plan, zoning ordinance, or subdivision ordinance.  Notice of the time and place of the hearings shall be given once at least ten days in advance by publication in a legal newspaper of the county.  Following the public hearing, the planning commission shall submit its recommendation to the board.

Then, SDCL 11-2-19 provides:

> After receiving the recommendation of the planning commission the board shall hold at least one public hearing on the respective comprehensive plan, zoning ordinance, or subdivision ordinance. Notice of the time and place of the hearings shall be given once at least ten days in advance by publication in a legal newspaper of the county.

[¶23.]    Here, it is undisputed that the planning commission held a public hearing on the proposed ordinances, before which it gave ten-days' notice and after which it submitted its recommendation to the board of commissioners.  It is further undisputed that after receiving the recommendation from the planning commission, the board of commissioners held a hearing on the respective zoning ordinances. Although the board of commissioners gave notice of its hearing before receiving the planning commission's recommendation, nothing in SDCL 11-2-19 mandates that the board wait to give notice until *after* it receives the planning commission's recommendation.  Based on our review of the record, therefore, the board of

adjustment's approval of Mustang's CUP is not void because of the procedure Moody County followed in enacting its 2003 ordinances.

[¶24.] Nonetheless, the Citizens argue that even if the zoning ordinances were validly enacted in 2003, the zoning ordinances giving the board of adjustment the power to hear and consider CUPs were adopted prematurely, because Moody County did not have specific legislative authority in February 2003 to give a board of adjustment power to hear and consider CUP applications. They point out that it was not until July 1, 2003, after the Legislature amended SDCL 11-2-53 and gave boards of adjustment authority to hear CUPs, that Moody County could enact an ordinance empowering the board of adjustment. *See* 2003 S.D. Sess. Laws ch. 78, § 2 (amending SDCL 11-2-53). Since July 1, 2003 was after February 23, 2003, the Citizens maintain that Moody County's zoning ordinance was not validly created, and therefore, any action taken by the board of adjustment, including its approval of Mustang's CUP, is void *ab initio*.

[¶25.] A county is a creature of statute and has "only such powers as are expressly conferred upon it by statute and such as may be reasonably implied from those expressly granted." *State v. Quinn*, 2001 S.D. 25, ¶ 10, 623 N.W.2d 36, 38 (quoting *State v. Hansen*, 75 S.D. 476, 68 N.W.2d 480, 481 (1955)). Article IX, section 2 of the South Dakota Constitution provides that counties have the authority to "exercise any legislative power or perform any function not denied by its charter, the Constitution or general laws of the state." In particular, SDCL 7-18A-2 gives a county the authority to adopt ordinances "as may be proper and necessary to carry into effect the powers granted to it by law . . . ." Yet a county may not enact an ordinance that conflicts with state law. SDCL 6-12-5; *Rantapaa*

*v. Black Hills Chairlift Co.*, 2001 S.D. 111, ¶ 23, 633 N.W.2d 196, 203. A conflict exists if (1) the county ordinance prohibits the same act forbidden by state law (the ordinance is void to the extent it is duplicative), (2) a conflict exists between state law and an ordinance, or (3) state law occupies the field to the exclusion of all local regulation. *Rantapaa*, 2001 S.D. 111, ¶ 23, 633 N.W.2d at 203.

[¶26.] From our review of Moody County's 2003 ordinances and the statutory scheme governing boards of adjustment, we conclude that Moody County's ordinance was not void *ab initio*. The Citizens have not established that the ordinance prohibited an act forbidden by state law, created a conflict between state law and the ordinance, or encroached upon a field occupied by state law to the exclusion of all local regulation. *See id.* In enacting the ordinance, Moody County deemed it necessary to create a board of adjustment to hear and consider CUPs. *See* SDCL 7-18A-2. While, on February 23, 2002, SDCL 11-2-53 did not specifically give boards of adjustment the authority to consider CUPs, there was nothing in SDCL chapter 11-2 (2003) to suggest that the Legislature intended a board of adjustment to have only appellate jurisdiction. That a board of adjustment's powers then extended beyond appellate matters is evidenced in SDCL 11-2-59 (2003), which provided, in part, that a board of adjustment may "decide in favor of the applicant on *any matter upon which it is required to pass under any such ordinance*[.]" (Emphasis added.) Finally, there is no evidence that in 2003 the Legislature intended to occupy the field of CUPs to the exclusion of all local regulation. *Contra In re Yankton Cnty. Comm'n*, 2003 S.D. 109, ¶ 21, 670 N.W.2d 34, 41 (Legislature intended to fully occupy the field of *appeals* of county zoning decisions). In fact, mere months after Moody County's ordinance went into effect, the Legislature

amended SDCL 11-2-53 to give boards of adjustment specific statutory authority to consider certain conditional uses. And today, through SDCL 11-2-17.3, the Legislature has placed the power in counties to choose the approving authority for CUPs.

### 3. Original Jurisdiction

[¶27.] The Citizens next contend that although SDCL 11-2-17.3 gives Moody County the power to designate the approving authority for a CUP application, "[t]he phrase 'board of adjustment' appears nowhere in SDCL 11-2-17.3," which means the Moody County Board of Adjustment could only act as an appellate body of county government under SDCL chapter 11-2. In its entirety, SDCL 11-2-17.3 provides:

> A county zoning ordinance adopted pursuant to this chapter that authorizes a conditional use of real property shall specify the approving authority, each category of conditional use requiring such approval, the zoning districts in which a conditional use is available, and the criteria for evaluating each conditional use. The approving authority shall consider the stated criteria, the objectives of the comprehensive plan, and the purpose of the zoning ordinance and its relevant zoning districts when making a decision to approve or disapprove a conditional use request.

This statute directed Moody County to specify the approving authority for allowing conditional uses of real property. Here, Moody County adopted an ordinance that created a board of adjustment and empowered the board of adjustment to hear and consider CUPs as the approving authority. The Citizens' claim is without merit and neither Moody County nor the board acted in excess of its authority when the board exercised original jurisdiction over Mustang's CUP application.

### 4. Regularity of the Board's Procedures

[¶28.] "Our consideration of a matter presented on certiorari is limited to whether the board of adjustment had jurisdiction over the matter and whether it

pursued in a regular manner the authority conferred upon it. A board's actions will be sustained unless it did some act forbidden by law or neglected to do some act required by law." *Armstrong*, 2009 S.D. 81, ¶ 12, 772 N.W.2d at 648 (citations omitted). The Citizens seek reversal of the board of adjustment's decision to grant Mustang's CUP because they allege that the board failed to adopt rules as required by SDCL 11-2-54, and one board member was not a resident of Moody County when the board voted to approve Mustang's CUP. On these issues, the circuit court, in its findings of fact, wrote: "At the oral hearing in front of this Court, counsel for Petitioners conceded that, assuming *arguendo*, the zoning ordinance is valid, there were no procedural or substantive due process violations as they pertain to the BOA proceedings." The Citizens did not object to the circuit court's findings of fact and conclusions of law nor propose findings and conclusions of their own. Although we would, therefore, limit our review to whether the court's findings of fact support its conclusions of law, there are no specific findings to review. *See Premier Bank, N.A. v. Mahoney*, 520 N.W.2d 894, 895 (S.D. 1994) (quoting *Huth v. Hoffman*, 464 N.W.2d 637, 638 (S.D. 1991)). Without such findings, or an objection by the Citizens, a meaningful review by this Court is not possible.

[¶29.]     Affirmed.

[¶30.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.